**UNITED STATES of America**

v.

**Edwin ADLER and City Wide Realty Association, Inc.**

**Crim. No. 75–120.**

United States District Court,
E. D. Pennsylvania.

May 20, 1975.

Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Joel Harvey Slomsky, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Defendants have moved to suppress all evidence seized pursuant to a warrant to search

"premises known as Unruh & Bustleton Avenue, or 2100 Unruh Avenue, Basement Floor and Middle Floor, with entrance facing Bustleton Avenue of a two story red brick building . . . [for] . . . records of financial indebtedness contracted in connection with and in addition to mortgages insured by the Federal Housing Administration; which are in violation of Title 18, United States Code, § 1010."[1]

· The affidavit submitted by F.B.I. Agent Zagreb in support of the application for the search warrant consisted of the following:

"The affiant has a statement from a purchaser of a home through City Wide Realty, the mortgage for which home was insured by the Federal Housing Administration in which statement the purchaser stated that at settlement City Wide Realty as creditor accepted a note from the purchaser as debtor for $1,800; that payments were made by mail and in person to City Wide Realty at Unruh & Bustleton Avenue, Philadelphia, Pa., and that affiant has seen a rent book containing receipts for payments made from 3/1/69 to 2/5/1970; and a letter from City Wide Realty Company, dated April 21, 1971, asking for late payments of $324.75; and a statement from home owner that she saw records of financial indebtedness in the office of City Wide Realty Company, Unruh & Bustleton Avenue, Philadelphia, on 4/28/72."

The affidavit was sworn to on May 2, 1972, and the warrant issued and was executed on the same day. The search was conducted by a team of agents, two assigned to the basement floor and two to the middle floor under the direction and supervision of a group leader. The search lasted two hours and included all desk drawers and filing cabinets on both floors of the premises. The search uncovered evidence of "secondary" financing, which led to the filing of the 12 count indictment charging violations of § 1010 with respect to purchases of five different homes, mortgages for which were insured by the FHA.

[1]. 18 U.S.C. § 1010 provides, in part:

"§ 1010. *Federal Housing Administration transactions*

Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, . . . or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, . . . shall be fined . . . or imprisoned . . . . ."

Defendants attack the search on several grounds, including, *inter alia*, that the warrant does not sufficiently describe the place to be searched; the affidavit does not furnish probable cause to believe that a violation of 18 U.S.C. § 1010 had been committed since it sets forth no facts to support a conclusion that a false statement had been submitted; the affidavit sets forth no facts upon which a determination of the reliability of the informant could be based; and the affidavit set forth information of events too remote in time to furnish probable cause at the time of the issuance of the warrant.

## DISCUSSION

It would be helpful to state briefly, at the outset, the principles governing the review of probable cause for issuance of warrants. Some are set forth in Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), as follows:

". . . that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96 [85 S.Ct. 223, 228, 13 L.Ed.2d 142] (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311 [87 S.Ct. 1056, 1062, 18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108 [85 S.Ct. 741, 745, 13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270–271 [80 S.Ct. 725, 735–736, 4 L.Ed.2d 697] (1960)."

█ In addition, the affidavit must present evidence of sufficiently current events on which the magistrate can make a finding that probable cause exists at the time of the issuance of the warrant. Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); United States v. Johnson, 461 F.2d 285 (10 Cir. 1972); United States v. Guinn, 454 F.2d 29 (5th Cir.), cert. denied, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972); United States v. Van Ert, 350 F.Supp. 1339 (E.D.Wisc.1972). Further, if the evidence submitted includes information furnished by an informant

"[t]he first step in the analysis is to determine whether the finding of probable cause is based on the informant's tip alone, the tip plus evidence corroborating the tip, or the tip and other incriminating evidence. If the tip alone or the tip plus corroboration of the tip are the sole grounds for the finding by the magistrate of probable cause, then *Spinelli* and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), demand that the tip or the tip plus corroboration meet certain standards." United States v. McNally, 473 F.2d 934, 937 (3d Cir. 1973).

As Judge Adams pointed out in *McNally, Spinelli* and *Aguilar* require that if the informant's tip is essential to the determination of probable cause, the additional allegations of the affidavit must set forth a factual basis for the informant's conclusion, and a factual basis for the affiant's reason to believe the informant.

Proceeding with the foregoing principles in mind, I will consider the several objections raised by the defendants to the warrant, the affidavit, and the search.

█ First, as to the description of the place to be searched, if the magistrate is permitted great leeway in filling in blank spaces, the warrant might be said to describe the business premises of City Wide Realty, whose name appears in the caption. The description ". . . 2100 Unruh Avenue, Basement Floor and Middle Floor, with en-

trance facing Bustleton Avenue of a two story red brick building" could be consistent with a two story dwelling with a residential entrance on Unruh Avenue and a side entrance to a business establishment occupying the basement level and the first floor of the building.

Next, the gravamen of the crime alleged to have been committed (violation of 18 U.S.C. § 1010) is the filing of a false statement to influence action by the FHA. Defendants point out that nowhere in the affidavit is there any mention of a statement having been submitted in connection with the transaction in question. That omission troubles me greatly. The government argues that the magistrate may take judicial notice of regulations governing the insuring of mortgages by the FHA; that the regulations require a statement by the purchaser at settlement that there is no secondary financing; and that there is a presumption that federal officials have complied with the law, therefore a statement denying secondary financing must have been filed, otherwise the mortgage would not have been insured.

■ I am aware of no case in which such mental gymnastics have been permitted to substitute for evidence. The matter of judicial notice of the regulations is unrealistic. Almost 400 pages of 24 Code of Federal Regulations are devoted to Subchapters A and B of Chapter II dealing generally with various aspects of mortgage and loan insurance programs under the National Housing Act. It is too much to expect *any* judicial officer to be conversant with all of the provisions of those complex regulations. Further, even if such familiarity be assumed, it would only serve as the platform from which the magistrate would be required to leap to the conclusion that, because the regulation required such a statement, it must have been filed otherwise the mortgage would never have been approved by the appropriate FHA officials. On this

ground alone the warrant could be declared invalid, but even assuming that omission is not fatal, there are other reasons to grant defendant's motion to suppress.

Probable cause in this case unquestionably depends upon the informant's tip, thereby triggering the requirement to comply with *Aguilar* and *Spinelli*. Defendants attack the sufficiency of the affidavit on both grounds; that there are no underlying facts to support the informant's conclusion; and that there are no facts in the affidavit on which the affiant could have based a determination as to the informant's reliability. Mixed in with this is defendant's contention that such information as was furnished in the affidavit was too stale to furnish probable cause at the time the warrant issued.

The government contends that the informant in this case is the victim of the crime, and therefore does not have to meet the usual reliability tests, citing Brown v. United States, 125 U.S. App.D.C. 43, 365 F.2d 976 (1966), and further, that the informant's information was corroborated. There is room for disagreement as to whether the informant here was a victim of, or a participant in, the crime of furnishing a false statement. Be that as it may, the matter of reliability can perhaps be resolved by the fact that the affidavit sets forth corroboration in the form of the "rent" book and the letter asking for rent payments, both of which the affiant saw. This would satisfy one prong of the *Aguilar* and *Spinelli* tests. With respect to the other, there are some underlying facts and circumstances set forth in the affidavit on which, by a common sense interpretation, the magistrate could predicate a finding of probable cause to believe that a crime had been committed, as follows:

The informant was the purchaser of a home; the purchaser certainly ought to know whether she had an FHA insured mortgage; the informant said she gave a note at settlement for $1,800 to

City Wide Realty; she made payments; she exhibited to the affiant a "rent" book with a record of payments from March 1969 to February 1970; she exhibited a letter from City Wide Realty dated April 21, 1971 asking for late payments; and she said she saw records of financial indebtedness in City Wide Realty's office on April 28, 1972.

The information relates to a violation which had allegedly been committed at some unspecified time in the past (presumably prior to March 1, 1969 when the "rent" payments started). The "rent" book entries spoke to events only up to February 1970. The late payments letter was dated April 21, 1971, more than a year before the affidavit was sworn to. Such information might be too "stale", too remote in time (see cases cited at page 3) to support a finding of probable cause, but it is made current by the statement that the informant "saw records of financial indebtedness in the office of City Wide Realty . . . on 4/28/72." The magistrate might reasonably have understood those records of indebtedness to be records of the informant's indebtedness.

Such information as was contained in the affidavit, therefore, referred to a single isolated transaction. Had the name of the purchaser, or the address of the premises, or both, been identified to the magistrate, a properly limited warrant to search for records of *that* transaction could properly have issued. Without identification of the purchaser or the premises, however, there was no way for the magistrate to limit the scope of the search to evidence of the only crime as to which he had been furnished information. There was no information that these defendants were engaged in a number of such transactions, unless

it be in the informant's statement that she said "records of financial indebtedness . . . on 4/28/72." It would indeed require a large measure of speculation for the magistrate to interpret that statement as referring to prohibited secondary financing for other purchasers of homes insured by FHA.[2] If the magistrate did so interpret that statement, the affidavit is totally lacking in underlying facts upon which the informant based her conclusion. There was, accordingly, no basis for a finding of probable cause by the magistrate that, at the time he issued the warrant, there were violations relating to secondary financing on homes other than the informant's. There was thus no basis for the wide ranging search of everything on the premises of City Wide Realty (assuming them to be the premises of City Wide Realty) in the hope of finding evidence of other instances of secondary financing. The government has cited no case to support such a broad search of evidence of criminal violations on evidence of an isolated transaction, and I have found none. See and compare United States v. Feldman, 366 F.Supp. 356, 363 (D.C.D. Hawaii 1973); and see Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed. 2d 431 (1965) for a discussion of the background and history of the constitutional prohibition against the evil of the "general warrant."

The government contends that the warrant was properly limited in that the only files seized were those containing evidence of illegal transactions. The Fourth Amendment protects against unwarranted searches as well as seizures. It was the search which violated defendant's rights and which requires suppression of that which was seized.

The motion will be granted.

---

2. This is particularly true since the affiant at the hearing on the motion to suppress, testified that the informant was not sure what records she saw in the office of City Wide Realty.