**UNITED STATES of America,
Appellant,**

v.

**Howard CHRISTINE, Perry
Grabosky, Appellees.**

**No. 81–2077.**

United States Court of Appeals,
Third Circuit.

Argued April 1, 1982.

Decided Aug. 30, 1982.

Rehearing and Rehearing En Banc
Denied Sept. 24, 1982.

William W. Robertson, U. S. Atty., Donald J. Fay, Asst. U. S. Atty. (argued), Newark, N. J., for appellant.

F. Emmett Fitzpatrick, John W. Morris (argued), Pierson, Cameron & Morris, Philadelphia, Pa., for appellees.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents this court for the first time with the question whether a partially invalid search warrant may be redacted so that evidence obtained pursuant to valid, severable portions of the warrant need not be suppressed. The issue has arisen on the government's appeal from the district court's suppression of all the materials seized pursuant to a warrant which, in the district court's view, authorized a search and seizure exceeding the ambit of the underlying showing of probable cause. After examining the purposes of the warrant requirement and the means by which those purposes are served, we conclude that the

practice of redaction is fully consistent with the Fourth Amendment and should be utilized to salvage partially invalid warrants. Because the district court did not consider redaction as an alternative to invalidating the entire warrant and suppressing all the evidence seized thereunder and might have reached a different result had it done so, we vacate the suppression order and remand for further proceedings.

## I.

On November 28, 1979, the United States, in pursuit of a search warrant, presented a United States Magistrate in the District of New Jersey with the affidavit of Richard Scott, an investigator of the Inspector General's Office of the Department of Housing and Urban Development [HUD]. Scott had been assigned to investigate allegations of fraud in HUD's Title I Home Insurance Program. In his affidavit, Scott conveyed information provided him by Phillip Lake and Henry Keiser about a scheme in which appellees Howard Christine and Perry Grabosky, the owners of Landmark Builders, Inc., allegedly fraudulently procured HUD Title I Home Improvement Loans for uncreditworthy individuals. According to Lake, Christine and Grabosky obtained these loans by bribing Glenwood Rapf, the loan officer for the HUD Title I program at Collective Federal Savings and Loan Association. Scott also related that Keiser had told him "that he was informed by Christine and Grobosky [sic] that they only intended to run Landmark Builders, Inc. for a short period of time and that before the company went out of business, they intended to increase their lines of credit with various of their creditors, deplete their assets and leave the company destroyed."

On the basis of the Scott affidavit, the magistrate issued a warrant authorizing any postal inspector to search the Absecon, New Jersey, offices of Landmark Builders, Inc., and to seize the following property as described by the warrant:

(a) all folders and all documents contained therein and all other documents relating to home improvements and home improvement contracts pursuant to the HUD Title I Insured Home Improvement Loan program;

(b) all checks, check stubs and bank statements, deposit slips and withdrawal slips, reflecting the receipt and disbursement of funds through Landmark Builders, Inc. for the period January 1, 1977 to the present;

(c) all general ledgers, general journals, cash receipt disbursement ledgers and journals for the period January 1, 1977 to the present;

(d) all correspondence to and from and submissions to Collective Federal Savings and Loan; and

(e) all other documents, papers, instrumentalities and fruits of the crime of submission of false statements in connection with the HUD Title I Insured Home Improvement Loan program as well as any evidence of a scheme to defraud HUD or Collective Federal Savings and Loan or any other creditor by use of the United States mails.

A postal inspector conducted the search the following day. The return of the warrant reveals that he seized prospective, active, and completed job folders; bank statements and check stubs for 1978 and 1979; a customer list; receipts; deposit slips; a job completion summary; two lease agreements and accompanying cover letter; a loan fee receipt; "salesman records"; job summary costs; an income statement; a cash disbursements journal; a writing entitled "Correct Way To Do Business"; a lunch receipt; and a letter to the press.

On December 10, 1980, a federal grand jury returned a ten-count indictment charging Christine and Grabosky with conspiring to violate and violating 18 U.S.C. § 657 (1976), by causing Rapf knowingly and wilfully to misapply funds with the intent to injure and defraud Collective. In a related case, Rapf pleaded guilty to conspiring with Christine and Grabosky to make false statements in loan applications submitted to Collective. No other charges have been brought against Christine, Grabosky, or Rapf.

Prior to trial, Christine and Grabosky moved for suppression of the property seized pursuant to the search warrant. The district court ruled that Scott's affidavit established probable cause only to believe that Christine and Grabosky "had bribed one individual at a particular savings institution to approve certain specific loan applications submitted by particular uncreditworthy individuals," *United States v. Christine*, Crim. No. 80–416, slip op. at 3 (D.N.J. March 12, 1981), and that evidence thereof would be found among the relevant records at appellees' office. Finding that the warrant's scope of authorization—a search and seizure of virtually all of the corporation's records within the last few years preceding the date of the search—was impermissibly broad in light of the probable cause showing that had been made and therefore failed to satisfy the particularity requirement of the Fourth Amendment, the district court suppressed all the material seized pursuant to the warrant.

The United States moved for reconsideration. It argued that the Scott affidavit established probable cause to believe that appellees were engaged in the federal crimes of conspiracy, bankruptcy fraud, and aiding and abetting the misapplication of savings and loan institution funds. On the basis of that putative probable cause showing, the government argued that the scope of the warrant's authorization was not overbroad. The district court, however, declined to reconsider its previous ruling. It ruled that the Scott affidavit had not established probable cause to believe that bankruptcy fraud had been committed and that, even if such probable cause had been shown, it did not provide "carte blanche for the seizure of virtually all of the business records of the corporation over a four year period." *United States v. Christine*, Crim. No. 80–416, slip op. at 3 (D.N.J. May 13, 1981). The United States has appealed the order denying its motion for reconsideration.

In this appeal, the United States contends that the warrant satisfied the particularity requirement of the Fourth Amendment and was not invalid as a general warrant. It argues that generic description of the items to be seized (*e.g.*, "folders," "checks," and "general ledgers") is an acceptable and constitutionally valid practice. It further argues that the generic descriptions were limited through modification by the final clause of the warrant authorizing seizure of "all other documents, papers, instrumentalities and fruits of the crime[s] . . . ." The government also argues that complete suppression was improper because, even if some portions of the warrant were overbroad, other portions of the warrant were valid and the evidence seized pursuant to the valid portions of the warrant should not have been suppressed. Finally, the government argues that the Scott affidavit established probable cause to believe that appellees' entire business was fraudulent and, therefore, that probable cause existed to seize all the records of Landmark Builders.

Appellees submit that the district court's ruling was correct. Additionally and alternatively, they argue that the warrant is also invalid because it was a general warrant and because the Scott affidavit failed to establish probable cause.

## II.

The parties vigorously dispute whether the warrant in this case was a general warrant. A general warrant is a warrant that authorizes "a general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The Fourth Amendment seeks to prevent general warrants by requiring all warrants to contain a "particular description" of the things to be seized. The particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74,

76, 72 L.Ed. 231 (1927).[1] For example, the Fourth Amendment condemns as general warrants those warrants that authorize searches for and seizures of: "smuggled goods," as was provided by the notorious writs of assistance, *Boyd v. United States*, 116 U.S. 616, 624, 6 S.Ct. 524, 29 L.Ed. 746 (1886); "obscene materials," *Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas," *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 231 (1965); "illegally obtained films," *United States v. Cook*, 657 F.2d 730 (5th Cir. 1981); and "stolen property," *United States v. Giresi*, 488 F.Supp. 445 (D.N.J.1980), *aff'd mem.*, 642 F.2d 444 (3d Cir. 1981), *cert. denied*, 452 U.S. 939, 101 S.Ct. 3081, 69 L.Ed.2d 953 (1981); *United States v. Burch*, 432 F.Supp. 961 (D.Del.1977), *aff'd mem.*, 577 F.2d 729 (3d Cir. 1978).

■ The warrant at issue cannot be invalidated as a general warrant for it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence. Rather, the warrant's clauses describe in both specific and inclusive generic terms what is to be seized: "all folders . . . all checks . . . all general ledgers [and] all correspondence. .. .. " [2] By directing the searching officers to seize *all* of these items, the magistrate, rather than the officer, determined what was to be seized. Neither is the final clause of the warrant ("all other documents, papers, instrumentalities and fruits of the crime") in the nature of a general warrant.

*See Andresen v. Maryland*, 427 U.S. 463, 470–77, 96 S.Ct. 2737, 2743–46, 49 L.Ed.2d 627 (1976).

■ The district court did not proceed to analyze the case in general warrant terms; rather, the district court properly approached it by measuring the scope of the search and seizure authorized by the warrant against the ambit of probable cause established by the affidavit upon which the warrant issued. The Fourth Amendment dictates that a magistrate may not issue a warrant authorizing a search and seizure which exceeds the ambit of the probable cause showing made to him. "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.6, at 97 (1978).[3]

Even though it did not find the warrant to be a general warrant, the district court reached the same result by invalidating the warrant in its entirety. The district court approached the warrant in terms of the cumulative effect of all of its clauses by measuring the sum of the evidence authorized to be seized against the probable cause established by the Scott affidavit. As a result of its conclusion that the sum of the evidence authorized to be seized exceeded the underlying probable cause justification, the district court invalidated the entire warrant and suppressed all that had been seized. A different result may have obtained had the district court considered redacting the warrant in order to preserve the valid clauses and allow the government's use of the materials seized under them. At the time of the suppression hearing, how-

1. *Quoted in Walter v. United States*, 447 U.S. 649, 656 n.7, 100 S.Ct. 2395, 2401 n.7, 65 L.Ed.2d 410 (1980); *Andresen v. Maryland*, 427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

2. *Accord In re Application of Lafayette Academy, Inc.*, 610 F.2d 1, 5–6 (1st Cir. 1979).

3. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *United States v. Roche*, 614 F.2d 6, 7 (1st Cir. 1980);

*Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324, 327–28 (1st Cir. 1978) (Campbell, J., concurring); *VonderAhe v. Howland*, 508 F.2d 364, 368–70 (9th Cir. 1974); *United States v. Adler*, 393 F.Supp. 707 (E.D. Pa.1975). *See also* S. Saltzburg, *American Criminal Procedure: Cases and Commentary*, 56–57 (1980); Mascolo, Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy, 73 Dick.L. Rev. 1, 4–6 (1968).

ever, there was no clear rule in this circuit regarding the availability of redaction as an alternative to total suppression. It is understandable, therefore, that the district court proceeded as it did.

## III.

By redaction, we mean striking from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment. Each part of the search authorized by the warrant is examined separately to determine whether it is impermissibly general or unsupported by probable cause. Materials seized under the authority of those parts of the warrant struck for invalidity must be suppressed, but the court need not suppress materials seized pursuant to the valid portions of the warrant.

Redaction is inappropriate when the valid portions of the warrant may not be meaningfully severable from the warrant as a whole. As the California Supreme Court noted in *Aday v. Superior Court of Alameda County*, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47, 53 (1961):

> We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that

the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.

Although many state courts have adopted the practice of redaction,[4] the Fifth and Ninth Circuits are the only federal appellate courts to have explicitly recognized it as an alternative to total suppression. *See United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982);[5] *United States v. Cook, supra.*[6] An earlier panel of the Ninth Circuit in *VonderAhe v. Howland, supra*, applied a procedure that may be confused with redaction when, after determining a warrant's invalidity, the court measured the scope of probable cause established by the information submitted to the magistrate and then sifted through the seized material to determine which seizures were supported by probable cause. The *VonderAhe* court did not attempt first to redact the warrant in order to tailor it to the scope of the probable cause established by the affidavit and then segregate the seized material according to the clauses of the warrant under which it had been seized. The *VonderAhe* approach was not evaluated in the later *Cardwell* decision.

This is the first time that this court has considered the redaction principle in depth. Previously, two conflicting district court opinions, both of which this court affirmed by judgment order, provided this circuit's

---

**4.** *See United States v. Giresi*, 488 F.Supp. at 459–60 (collecting state cases); *Aday v. Superior Ct. of Alameda Cty., supra* (leading case); *People v. Mangialino*, 75 Misc.2d 698, 348 N.Y. S.2d 327 (Cnty.1973); *Walthall v. State*, 594 S.W.2d 74 (Tex.Cr.App.1980); *see also 2 W. LaFave, supra*, § 4.6(f). *But see Kinsey v. State*, 602 P.2d 240 (Okl.Cr.App.1979).

**5.** The Ninth Circuit stated that the Supreme Court approved redaction in footnote 11 of *Andresen v. Maryland, supra*. In the only passage of that footnote that could possibly support the Ninth Circuit's reading, the Court wrote:

> The record discloses that the officials executing the warrants seized numerous papers that were not introduced into evidence. Although we are not informed of their content, we observe that to the extent such papers were not within the scope of the warrant or

were otherwise improperly seized, the State was correct in returning them voluntarily and the trial judge was correct in suppressing others.

Although we agree with the result reached in *Cardwell*, we do not agree that the redaction principle was approved in *Andresen*.

**6.** The Fourth Circuit has come close to adopting redaction, but has not yet explicitly done so. *See United States v. Jacob*, 657 F.2d 49, 52 (4th Cir. 1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982) ("we think [the warrant] was sufficiently particularized with respect to the items to be seized. We are further of the opinion that the challenged phrase should properly be treated as merely superfluous. . . ."); *United States v. Torch*, 609 F.2d 1088 (4th Cir. 1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 215 (1980).

only authority on redaction. In *United States v. Burch, supra,* Judge Stapleton refused the government's request to redact a warrant. He wrote,

> In effect, the government asks the Court to act as if there were two searches, a legal search for tires [an item specifically identified by the warrant] and an illegal search for 'other unknown items.' Such an approach cannot be squared with the interests which the Fourth Amendment was designed to protect. . . .
>
> The inclusion of the specific reference to tires afforded no protection to Mr. Jaegers' right to be free from a general search. The search warrant authorized and the search which in fact occurred, was no more narrow by reason of the inclusion of that reference than it would have been in its absence. When the agents entered Jaegers' property on the morning of May 7th they were authorized to search for and seize anything they thought might have been stolen. . . . In sum, there was only one search, that search [which], unlimited in scope as it was, violated the Fourth Amendment. . . .

432 F.Supp. at 964.

On the other side of the issue, in *United States v. Giresi, supra,* Judge Coolahan concluded that redaction—or "severance," as he labelled the practice—did not offend "the implied Fourth Amendment prohibition against general warrants," 488 F.Supp. at 460, and that as a matter of law it would be permitted in the case before him. Judge Coolahan recognized that *Burch* and two other district court opinions, *In re Application of Lafayette Academy, Inc.,* 462 F.Supp. 767 (D.R.I.1978), *aff'd on other grounds,* 610 F.2d 1 (1st Cir. 1979), and *United States v. Hatfield,* 461 F.Supp. 57 (E.D.Tenn.1978), *rev'd on other grounds,* 599 F.2d 759 (6th Cir. 1979), had reached contrary conclusions. He distinguished these cases primarily for the reason that they "rest[ed] upon the critical preliminary finding that the warrant under consideration was dangerously akin to a general warrant." 488 F.Supp. at 460 (footnote omitted).

We do not think that Judge Stapleton's criticisms of redaction can be avoided by factually distinguishing *Burch,* for they go to the foundation of the redaction principle. It thus appears that the only two decisions on point in this circuit reach contradictory conclusions regarding the constitutional validity of redaction. It also appears that, although redaction may be an accepted practice in many state courts, it has yet to attain currency in federal courts. Moreover, the *VonderAhe* decision, apparently still viable in the Ninth Circuit, is precedent that courts may go beyond redacting warrants to match the seized evidence directly against the underlying probable cause showing.

Because of the importance of the issue to the administration of criminal justice in this circuit, it is necessary that we conduct an independent inquiry into the constitutional validity of redacting warrants. Our own analysis of redaction in the context of the purposes of the Fourth Amendment and the means by which those purposes are served leads us to conclude that we should embrace redaction as a practice and principle of law. We proceed now to examine the purposes of the Fourth Amendment and the means by which those purposes are effectuated as a predicate to evaluating the practice of redaction in light of that examination.

## A.

Familiar history teaches that indiscriminate searches and seizures conducted pursuant to general warrants, known in the colonies as writs of assistance, "were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York,* 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980). Writs of assistance were issued upon "mere suspicion" and gave customs officials blanket authority to search where they pleased for goods imported in violation of British tax laws. *See generally Boyd v. United States,* 116 U.S. at 625, 6 S.Ct. at 529; N. Lasson, *The History and Development of the Fourth Amendment to the United*

*States Constitution* 13–78 (1937).[7] The effect of the widespread use of writs of assistance was that "police control took the place of judicial control, since no showing of 'probable cause' before a magistrate was required." *Henry v. United States*, 361 U.S. 98, 100, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959). In the eloquent and oft-quoted words of James Otis, the writs placed "the liberty of every man in the hands of every petty officer." *Boyd v. United States*, 116 U.S. at 625, 6 S.Ct. at 529.

The Fourth Amendment provided the new nation's answer to the odious writs of assistance:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Warrant Clause enshrines the functional, sensitive balance struck by the Bill of Rights between the government's need to enforce its laws and the colonists' antipathy for general searches and seizures licensed by writs of assistance.

Courts have identified no less than five separate, but related functions served by the Warrant Clause. First, by requiring that warrants be justified by an antecedent showing of probable cause, the Warrant Clause accommodates the citizenry's interest "in being safeguarded from rash and unfounded interferences with privacy and from unfounded charges of crime" while allowing "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

Second, the Warrant Clause prevents individual privacy from being subjected to the whims of law enforcement officers who are "engaged in the often competitive enterprise of ferreting out crime," *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), by requiring that a neutral and objective judicial officer "weigh the need to invade that privacy in order to enforce the law." *McDonald v. United States*, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

Third, the terms of the warrants' authorization serves to limit the scope of the intrusion. *Walter v. United States*, 447 U.S. at 656, 100 S.Ct. at 2401; *United States v. Poller*, 43 F.2d 911, 914 (2d Cir. 1930) (Hand, J.). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. at 196, 48 S.Ct. at 76.

Fourth, a warrant serves the purpose of notifying the subject of the search that his privacy must yield to the public's need for law enforcement.[8] "[A] warrant insures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (*citing Camara v. Municipal Court*, 387 U.S. 523, 532, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930 (1967)).

Fifth, the procedures for validly issuing a warrant generate a valuable record

---

**7.** Some of the colonists' hostility to the general warrants was rooted in the warrants being issued by the same authority, such as the Court of the Exchequer, which was charged with enforcing the law. But regardless of whether the issuing authority was a law enforcement official or a judge, "[h]ostility to seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment...." *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979).

**8.** *See Steagald v. United States*, 451 U.S. 204, 226, 101 S.Ct. 1642, 1654–55, 68 L.Ed.2d 38 (1981) (Rehnquist, J., dissenting); *In re Application of Lafayette Academy, Inc.*, 610 F.2d at 5; *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976); *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970), *cert. denied*, 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264 (1971); *United States v. LaMonte*, 455 F.Supp. 952, 960 (E.D.Pa.1978).

susceptible to subsequent judicial review. The justification for a warrant must be determined upon the basis of the information presented to the magistrate at the time the warrant was sought. "A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless." *Whiteley v. Warden,* 401 U.S. 560, 565 n.8, 91 S.Ct. 1031, 1035 n.8, 28 L.Ed.2d 306 (1971). "Probable cause is to be shown by persons willing to swear or affirm the truth of their statements and thus to be held accountable for their representations. In addition, the applicant for the warrant is committing to a public record the information that is known *before* the search so that, after the search takes place, there is no confusion between the ex-post and ex-ante positions of the applicant." *S. Saltzburg, supra,* at 57.

### B.

■ Although an individual whose Fourth Amendment rights have been abridged may seek recourse through a civil damages action,[9] the principal means today for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule. The primary justification for the exclusionary rule is its tendency to deter police conduct violative of the Fourth Amendment. *Stone v. Powell,* 428 U.S. 465, 482–86, 96 S.Ct. 3037, 3046–48, 49 L.Ed.2d 1067 (1976). A secondary consideration is that convictions secured upon the basis of illegally seized evidence could "compromise the integrity of the courts." *Dunaway v. New York,* 442 U.S. at 218, 99 S.Ct. at 2259. The application of the exclusionary rule in various situations turns upon a "pragmatic analysis of the exclusionary rule's usefulness" that balances the interests safeguarded by exclusion against the public interests served by admission of the evidence. *Stone v. Powell,* 428 U.S. at 488–89, 96 S.Ct. at 3049–50. *See also United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

■ The "pragmatic analysis of the exclusionary rule's usefulness" explains the judicial response to cases in which law enforcement officers, acting pursuant to a valid warrant, seize an article whose seizure was not authorized and which does not fall within an exception to the warrant requirement. Defendants in such cases have vainly argued that the entire search should be invalidated and that all evidence seized should be suppressed. Without exception federal appellate courts have held that only that evidence which was seized illegally must be suppressed;[10] the evidence seized pursuant to the warrant has always been admitted. *See, e.g., United States v. Dunloy,* 584 F.2d 6, 11 n.4 (2d Cir. 1978); *United States v. Forsythe,* 560 F.2d 1127, 1134 (3d Cir. 1977); *United States v. Mendoza,* 473 F.2d 692, 696 (5th Cir. 1972). *See also, Andresen v. Maryland,* 427 U.S. at 482 n.11, 96 S.Ct. at 2749 n.11. In such cases, the interests safeguarded by the Fourth Amendment have been adequately served by the suppression of only that evidence seized by overreaching the warrant's authorization. The heavy cost to society of excluding evidence which was legally seized and could have been admitted had the warrant been scrupulously honored far outweighs the objective of deterring future seizures exceeding a warrant's authority by suppressing all the evidence seized. "The

9. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Department of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

10. Some courts have concluded that in some circumstances it may be possible that the seizure of evidence not described in the warrant nevertheless may be justified under the "plain view" exception to the warrant requirement. *See, e.g., United States v. Crouch,* 648 F.2d 932 (4th Cir.), *cert. denied,* 454 U.S. 952, 102 S.Ct. 491, 70 L.Ed.2d 259 (1981); *United States v. Ochs,* 595 F.2d 1247 (2d Cir.), *cert. denied,* 444 U.S. 955 (1979). *See also United States v. Scarfo,* 685 F.2d 842 (3d Cir. 1982) (Gibbons, J., dissenting).

entire search would only seem to be invalid if its general tenor was that of an exploratory search for evidence not specifically related to the search warrant." *United States v. Russo*, 250 F.Supp. 55, 58 (E.D.Pa. 1966).

It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed.[11] The cost to society of sanctioning the use of general warrants—abhorrence *for which gave birth to the Fourth Amendment*—is intolerable by any measure. No criminal case exists even suggesting the contrary. The same result applies to warrants unsupported by probable cause but particularly describing the things to be seized, for the particularity and probable cause requirements are inextricably intertwined and, along with the requirement of antecedent justification before a neutral and objective magistrate, are among the most essential foundations of the Fourth Amendment's bulwark against general warrants.[12]

## C.

■ Redaction of a warrant containing valid severable phrases or clauses is consistent with all five purposes of the warrant requirement. First, with respect to the search and seizure conducted pursuant to the valid portion of the redacted warrant, the intrusion into personal privacy has been justified by probable cause to believe that the search and seizure will serve society's need for law enforcement. Second, because it is a duly issued warrant that is being redacted, the objective of interposing a magistrate between law enforcement officials and the citizen has been attained. Third, even though it may not be coterminous with the underlying probable cause showing, the scope of a search pursuant to a

particularized, overbroad warrant is nevertheless limited by the terms of its authorization. In the case of a warrant containing some invalid general clauses, redaction neither exacerbates nor ratifies the unwarranted intrusions conducted pursuant to the general clauses, but merely preserves the evidence seized pursuant to those clauses particularly describing items to be seized. Fourth, as to the valid portions of the warrant salvaged by redaction, the individual whose property is to be searched has received notification of the lawful authority of the executing officer, his need to search, and the limits of his power to search. Fifth, redaction does not affect the generation of a record susceptible to subsequent judicial review.

■ Applying the pragmatic analysis behind the exclusionary rule to the issue before us, we not only believe that redaction adequately serves the warrant clause and law enforcement goals, but also that it should be used in order to avoid the social cost of unnecessarily excluding validly seized evidence. As other courts have recognized,[13] redaction of a partially invalid warrant is analogous to courts' treatment of evidence seized by overreaching a warrant's scope of authorization. In redaction, as in the case of overreaching, only that evidence seized without valid authorization supported by particularized probable cause is suppressed. The cost of suppressing *all* the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression.

The district court in *United States v. Burch, supra,* criticized redaction as a fic-

---

11. See *Lo-Ji Sales, Inc. v. New York, supra* (reversing denial of motion to suppress evidence seized pursuant to warrant "reminiscent of the general warrant or writ of assistance"); *Stanford v. Texas, supra; Marcus v. Search Warrant, supra; United States v. Cook*, 657 F.2d at 734.

12. In Justice Stevens' words, "The requirement that a warrant only issue on a showing of

particularized probable cause was the means adopted to circumscribe the warrant power." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 328, 98 S.Ct. 1816, 1828, 56 L.Ed.2d 305 (dissenting opinion) (emphasis added).

13. *United States v. Cook*, 657 F.2d at 735 n.5; *United States v. Giresi*, 488 F.Supp. at 460 n.18; *People v. Mangialino*, 348 N.Y.S.2d at 338–39.

tion which asks a court to act as if there were two searches: a legal search, under the valid portions of the warrant, and an illegal search, under the invalid portions. Logically, *Burch's* approach would require either that all evidence seized pursuant to a partially invalid warrant be suppressed or that, in the interest of precluding complete suppression, the illegal aspects of the warrant be ignored. Both courses of action are unacceptable. The inflexibility of the first alternative abandons the pragmatic foundations of the exclusionary rule while the second needlessly sacrifices individual rights for the sake of law enforcement interests. The proper approach is to strike a middle ground between those two positions by utilizing the alternative of redaction.

*Burch's* viewpoint may be partly motivated by the secondary reason behind the exclusionary rule, a concern that redaction will compromise the integrity of the courts. But this danger is more imagined than real. Redaction does not countenance the admission of illegally seized evidence. If the overall tenor of the warrant or search smacks of a general warrant or an abuse of the prospective availability of redaction, then the entire search and seizure may be treated as a single illegality.

*Burch's* concern about courts engaging in a fiction that ignores the substance of the Fourth Amendment is more accurately directed at the approach taken in *VonderAhe.* By matching the evidence seized directly against the probable cause showing underlying the warrant, *VonderAhe* bypassed the terms of the warrant without regard to the centrality of the warrant clause to the scheme of the Fourth Amendment. Under *VonderAhe,* rather than reviewing the warrant, which embodies the magistrate's assessment of probable cause and the scope of the search and seizure it justifies, a reviewing court, in effect, considers *de novo* the government's case for a search and seizure.

By ignoring the terms of the warrant issued by the magistrate, a reviewing court acts as if the magistrate's intervention between the state and citizen in order to weigh the justification for the former's invasion into the latter's privacy was a mere formality. Furthermore, in failing to demand that the warrant be valid in significant measure, as is required for redaction, the *VonderAhe* approach offends the notification principle of the warrant clause by not ensuring that the subject of the search receives notice of the officer's lawful authority to search. Under *VonderAhe,* the warrant served upon a person could be completely invalid and yet evidence seized in the search may be admitted on the basis of an affidavit that that person never saw until after the search had been completed.

## IV.

We have concluded that redaction is an efficacious and constitutionally sound practice, and should be utilized in order to avoid unnecessary social costs. The district court lacked clear guidance on this issue and therefore did not consider it as an alternative to suppressing all the evidence seized pursuant to the challenged warrant. This appears to be an appropriate case for redaction and had the district court considered the redaction alternative, it might have reached a different result. We have both the affidavit and the warrant before us and could attempt to redact the warrant ourselves. However, because this case is not a post-conviction appeal and in any event must be remanded to the district court for further proceedings, we think it preferable rather than engage in the process of redaction ourselves, to allow the district court to have the first opportunity to accomplish that task.[14] On remand, rather than focusing upon the sum of the items authorized by the warrant to be seized, the district court should consider whether the

14. Although we do not reach all the issues raised on this appeal, we hold that appellees' argument that the warrant should be invalidated because the government did not satisfy the test of *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), lacks merit.

Lake and Keiser were not anonymous informants and their reliability as well as the basis upon which they concluded that appellees had engaged in criminal activity is clearly and adequately set forth in the Scott affidavit.

Scott affidavit establishes probable cause to support each severable clause of the search warrant. Only those clauses unsupported by probable cause should be invalidated.[15]

In its reconsideration of the suppression motion, the district court should keep in mind that the warrant in this case authorizes a search and seizure of mere evidence. In such a case, "probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required." *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). Courts must avoid a hypertechnical approach by heeding the admonition that "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Affidavits and warrants "must be tested by courts in a commonsense and realistic fashion." *Id.* See also, *United States v. Newman*, 685 F.2d 90, 92 (3d Cir. 1982). For instance, the use of generic classifications in a warrant is acceptable when a more precise description is not feasible. *See, e.g., United States v. Cook*, 657 F.2d at 733; *United States v. Cortellesso*, 601 F.2d 28, 32 (1st Cir. 1979), cert. denied, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *United States v. Scharfman*, 448 F.2d 1352, 1354 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). Likewise, in searches for papers, it is certain that some innocuous documents will be at least cursorily perused in order to determine whether they are among those papers to be seized. But no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision. Nor does the Fourth Amendment prohibit seizure of an item, such as a single ledger, merely because it happens to contain other information not covered by the terms of the warrant. *United States v. Beusch*, 596 F.2d 871, 876–77 (9th Cir. 1979).

This flexibility is especially appropriate in cases involving complex schemes spanning many years that can be uncovered only by exacting scrutiny of intricate financial records. The Court in *Andresen* seems to have recognized that the problems posed by prosecution of white-collar criminals must be accommodated:

> Petitioner also suggests that the specific list of the documents to be seized constitutes a "general warrant." We disagree. Under investigation was a complex real estate scheme whose existence could be proved only by piecing together many bits of evidence. Like a jigsaw puzzle, the whole "picture" of petitioner's false pretenses scheme with respect to Lot 13 T would be shown only by placing in the proper place the many pieces of evidence that, taken singly, would show comparatively little. The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession.

427 U.S. at 480 n.10, 96 S.Ct. at 2748 n.10. *See also United States v. Jacobs, supra; United States v. Abrams*, 615 F.2d 541, 547–51 (1st Cir. 1980) (Campbell, J., concurring).

The district court's order will be vacated and the case remanded for reconsideration in light of this opinion.

GIBBONS, Circuit Judge, concurring:

While I join in the court's judgment and in most of Judge Becker's opinion, I have several minor reservations about his analysis. The first is with respect to his references to the deterrence rationale for the exclusionary rule. When dealing with the exclusion of evidence seized in a warrantless search and seizure, perhaps something can be said for that rationale, although I remain skeptical about that justification. When dealing with the due execution of a warrant procedure. We do not suggest, though, that this is such a case.

---

**15.** As was pointed out in *Aday, supra*, the district court may decline to engage in redaction if it determines that it would be an abuse of the

judicially authorized warrant in accordance with its terms, however, deterrence of police misconduct as a justification for the exclusionary rule seems to me completely illogical. The police went to a judicial officer, obtained a warrant, and executed it in accordance with its terms. They did all that could be reasonably expected of them.

When we suppress evidence obtained pursuant to a warrant, either because the affidavits on which it issued were insufficient or because, as in this case, the subject matter to be searched for was insufficiently particularized, we are in effect exercising appellate review over the judicial performance of the issuing magistrate. We do so because the courts have an affirmative obligation under the fourth amendment to refrain from providing a public forum for dissemination of information which should have remained private. Use by a court of evidence which should, under the fourth amendment, have remained private is itself a violation of the fourth amendment.

Our adoption of the redaction requirement is entirely consistent with my position that judicial use of illegally obtained evidence is a violation of the fourth amendment separate and distinct from any violation committed by the police. By hypothesis the affidavit justified entry to the premises and seizure of some property. Thus there has been no invasion of privacy in the entry, and at least some of the property lost the shield of privacy. On the other hand the seizure of property for which no probable cause showing has been made does involve an invasion of privacy, which the court cannot compound.

Finally, I suggest that on remand, in deciding what evidence should be suppressed, the court may not end its analysis at the point at which it matches up the seized evidence with the probable cause showing in the affidavit. The officers were lawfully on the premises, and were required to examine the company's books and records in order to execute even the valid parts of the warrant. Under those circumstances the court should consider whether seizure of additional evidence was justified under the plain view doctrine.