UNITED STATES of America

v.

**SHIELDS RUBBER CORPORATION,** William F. Mahon, Dennis E. Houggy, Joseph R. Shary, James E. Fox, William A. Abbott, William O'Neil Hunt, Joseph W. Schu, Rexford D. Knowles, James N. Klehm, James C. Hartman, Defendants.

Crim. No. 89–98.

United States District Court, W.D. Pennsylvania.

Nov. 13, 1989.

Dennis P. Kissane, Asst. U.S. Atty., for U.S.

Herbert B. Conner, Pittsburgh, Pa., for defendant Shields Rubber Corp.

Michael Foglia, Pittsburgh, Pa., for defendant William F. Abbott.

Patrick Livingston, Pittsburgh, Pa., for defendant Dennis E. Houggy.

Frederick Thieman, Pittsburgh, Pa., for all other defendants.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

On July 12, 1989, a grand jury empaneled for this District returned a thirty-count indictment against the above-named defendants for alleged violations of federal customs laws, chiefly concerning the removal of country of origin markings from imported rubber hoses. See 19 U.S.C. § 1304.

All defendants except William Abbott have filed a variety of pretrial motions, which we address seriatim. Where applicable, all defendants join in each other's motions.

*Motions to Suppress*

Shields Rubber Corporation, joined by the other defendants, asserts that the search warrant used by the Customs Service in its search of the Shields Rubber Corporation offices at 137 Fort Pitt Boulevard, Pittsburgh, Pennsylvania, was invalid for three reasons. First, Shields Rubber asserts that the search warrant is overbroad and therefore a general warrant forbidden by the Fourth Amendment. See *Andresen v. Maryland*, 427 U.S. 463, 478–82, 96 S.Ct. 2737, 2747–49, 49 L.Ed.2d 627 (1976). Secondly, Shields Rubber asserts that the government violated its rights by conducting a search without a warrant when the warrant affiant, Thomas J. Hoffman, Special Agent of the United States Customs Service, directed a confidential informant to seize documents from the Shields Rubber Corporation offices. See *United States v. Walther*, 652 F.2d 788, 792 (9th Cir.1981). Third, Shields Rubber asserts that the search warrant affidavit is defective, because it fails to set forth adequate indicia of the confidential informant's reliability and basis of knowledge, see *Aquilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), and because the information contained in the affidavit is stale. See *United States v. Forsythe*, 560 F.2d 1127 (3d Cir.1977). We held a suppression hearing, at which the warrant affiant testified, to address the claims that the confidential informant acted as a government agent in removing documents from the offices of Shields Rubber. Having heard the testimony of the warrant affiant, we find as a matter of fact that the confidential informant was not acting at the direction of Special Agent Thomas Hoffman when he obtained records of Shields Rubber. In fact, the evidence convinces us to the contrary, that the confidential informant produced no documentary material which had been obtained from Shields Rubber after May 7, 1985, when the confidential informant first was contacted by Special Agent Hoffman to set up the meeting held on May 10, 1985.

■ With respect to defendants' argument that the search warrant *capias* clause is overbroad and insufficiently specific, Third Circuit jurisprudence permits the use of generic classifications in a search warrant where an item by item description is not feasible. *United States v. Christine*, 687 F.2d 749, 753 (3d Cir.1982). This is in keeping with the general requirement that search warrants be interpreted practically, not hypertechnically. See e.g. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965).

The warrant permits the seizure of four categories of items (1) business records of various kinds with respect to foreign imported products, specifically relating to the purchase, importation, handling, or sales of imported foreign manufactured hose and rubber products; (2) foreign made hose which is unmarked or improperly marked; (3) tools used for removing country of origin markings; and (4) "any other property" which constitutes evidence of the offenses of violation of customs laws. No serious

argument could be made that items in category (1), (2) or (3) are not described with sufficient particularity to allow an officer executing a search to decide with certainty whether an item was or was not to be seized, and as the Supreme Court ruled in *Andresen v. Maryland*, supra, 427 U.S. at 479–82, 96 S.Ct. at 2748–49, with respect to a clause even more general than that described in category (4) in the instant matter, a general clause allowing search and seizure of "other fruits" of evidence of a crime specifically described does not invalidate an otherwise proper search warrant. See *United States v. Christine*, 687 F.2d at 753.

■ With respect to the argument that the confidential informant's reliability and basis of knowledge are not adequately set forth in the warrant affidavit, we note initially that it is the affidavit as a whole which must contain sufficient indicia of probable cause, only one factor of which is the reliability and basis of knowledge of a person supplying confidential information. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Furthermore, when considered as a whole, the information provided by the confidential informant, including Shields Rubber documents containing in the documents themselves indications that Shields Rubber personnel were directing employees to remove country of origin markings, adequately set forth a basis from which the magistrate approving the warrant could properly conclude that the informant was reliable and had a basis of knowledge for his assertions that Shields Rubber management was issuing instructions to employees to remove country of origin markings. The confidential informant's reliability was also corroborated by an undercover purchase by the affiant of hose which appeared to have had markings removed, by a similar report from a second confidential source, this one a current employee at Shields Rubber Company, and by a customs inspection of three shipments of industrial hose which did not conform to marking requirements.

■ Finally, defendants argue that the warrant affidavit's information was too "stale" to supply probable cause for a search in August 1986. Overlooking the information supplied by a confidential informant only a week before the search, there was physical evidence that Shields Rubber continued to violate marking requirements as recently as July 18, 1986, and had been violating marking requirements before May of 1985. The duration of the alleged pattern of violations, together with the common knowledge that businesses maintain both inventories and business records over extended periods of time, support an inference that the items sought by the search would remain on the Shields Rubber premises much longer than in a case, for instance, involving the storage of a single item of stolen property, or of a single delivery of controlled substances. We conclude that the information in the warrant was not "stale".

The motions to suppress are denied.

### Motion for Bill of Particulars

Because the government has supplied the specific regulations alleged to have been violated, the defendants' request for a Bill of Particulars is denied as moot.

### Motion to Dismiss

■ Shields Rubber moves to dismiss Counts 2, 4 and 5 through 223 of the indictment against it on the grounds that the corporation known as Shields Rubber Corporation, originally incorporated in Pennsylvania in 1946, went out of existence on March 28, 1985, when it merged with several other corporations to form a new entity, also known as Shields Rubber Corporation (Shields Rubber II). In Pennsylvania, a corporation may be indicted for crimes only within two years after the date of its dissolution. 15 P.S. § 2111. See *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959). The indictment having been filed more than two years after March 28, 1985, Shields Rubber argues that it is time-barred.

Shields Rubber's argument would be persuasive if Shields Rubber had indeed been dissolved, as was the corporation in *United States v. Arcos Corporation*, 234 F.Supp. 355 (N.D.Ohio 1964). Shields Rubber

merged, however, into Shields Rubber II, and pursuant to 15 P.S. § 1907, Shields Rubber II remains liable for all the liabilities, including criminal liability, of the merged Shields Rubber Corporation.

■ The individual defendants, except Houggy and Abbott, move to dismiss the conspiracy charged against them in Count 4 of the indictment, on the grounds that it fails to properly charge a conspiracy to violate 19 U.S.C. § 1304(h). Their argument is based on the portion of the indictment that states that it was part of the purpose of the conspiracy that country of origin markings would be removed to prevent Shields Rubber customers or the customers' employees, from knowing the true country of origin of the hose. Since the purpose of marking requirements is to ensure that ultimate purchasers know the country of original manufacture of the goods they purchase, defendants argue that any purpose to mislead employees of ultimate purchasers is irrelevant. Therefore, they conclude the indictment considered by the grand jury may have been returned on grounds that do not constitute a violation of law.

The defendants' argument fails to consider the full language of the indictment, but more importantly fails to consider that where the "ultimate purchaser" is a corporation, that it can "know" the country of origin only through the knowledge of its employees. Language such as that used in Count 4, therefore, simply reflects a careful drafting designed to avoid arguments based on linguistic quibbling that would arise if it were left out. To hold that language designed to make the indictment more exact by spelling out how the conspiracy was allegedly carried out would be not only straining the English language to find a nonexistent ambiquity, but also would be ignoring the purpose of the indictment, which is to inform the defendant of the charge against him sufficiently so that he may prepare a defense, and which would bar future prosecution. See *United States v. Scanzello*, 832 F.2d 18 (3d Cir.1987). The motion to dismiss is denied.

■ Defendants, Shary, Hunt, Knowles and Klehm also seek dismissal of Counts 1–3 of the indictment charging them with felonies under 18 U.S.C. § 542, on the grounds that they are properly charged only with misdemeanors only under the more specific statute applicable to marking requirements, 19 U.S.C. § 1304(h). As charged in the indictment, however, the defendants are alleged to have violated 18 U.S.C. § 542 by importing hose into the United States by means of a fraudulent practice—namely importing hose in such a manner that country of origin markings could easily be removed, and thereafter removing the country of origin markings. While the offense of removing country of origin markings, 19 U.S.C. § 1304(h), may be a lesser included offense or component of this alleged fraudulent practice, it is not coextensive with or aimed at the same evil which is the target of 18 U.S.C. § 542. The defendants must be shown to have participated in a fraudulent scheme to import for conviction under 18 U.S.C. § 542, a showing unnecessary for liability under 19 U.S.C. § 1304(h). Conversely, defendants may be found liable under 19 U.S.C. § 1304(h) without any showing that they participated in the import process. The motions to dismiss are denied.