**UNITED STATES of America,
Appellee,**

v.

**Anthony Thomas CAMPANILE and
William Monks, Appellants.**

**Nos. 764, 765, Dockets 74–2160, 74–2320.**

United States Court of Appeals,
Second Circuit.

Argued March 14, 1975.

Decided April 24, 1975.

Richard C. Blum, Burlington, Vt., for appellant Monks.

J. William O'Brien, Burlington, Vt., for appellant Campanile.

Jerome F. O'Neill, Asst. U. S. Atty. (George W. F. Cook, U. S. Atty. for the District of Vermont, on the brief), for appellee.

Before LUMBARD, MOORE and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Anthony Thomas Campanile and William Monks appeal from judgments of conviction entered after a nine-day jury trial in the United States District Court for the District of Vermont, Albert W. Coffrin, J. Each was found guilty on two counts of violating 18 U.S.C. §§ 2, 2113(b), theft from a federally insured bank, and sentenced to eight years in prison. We affirm the judgments of conviction.

I.

The case was unusual because there were no eyewitnesses to the bank thefts, which were done at night, but there was little question about the presence of appellants, strangers to northern Vermont, in the area at the crucial times. From the evidence before the jury—some of which appellants argue was improperly admitted—the jury could reasonably have found the following: In May 1973, pursuant to a plan to rob banks, Campanile and Monks stole a van in New Jersey, switched license plates with another vehicle, and drove to Vermont the next day. Having trouble with the shift linkage on the van, they were forced to seek assistance from residents of Enosburg Falls, Vt. After tinkering with it for a while, they gave up, went to the American Legion Hall for a few beers, and stayed until closing time. Later that evening they returned to the Hall,

pried open a door, and took approximately $300 (including $75 in singles) and several cartons of cigarettes. Blue paint was found in the pry marks on the door, and a coin box that had not been used for years was forced open by the robbers.

That same night appellants broke into the Howard Bank of Enosburg Falls. They again gained entry by forcing open a door. Blue paint was found in the pry marks, and once more the evidence indicated that strangers to the area committed the break-in—several outer doors were broken into before the door leading to the bank was located. This time, approximately $900 in coins was taken from locked tellers' vaults. Campanile and Monks then drove to Milton, Vt., where they opened a window in the Franklin Bank and stole approximately $1,300 in coins from tellers' vaults. A resident of the town spotted lights in a lot near the bank at about 4:00 A.M. that morning. A half hour later, two policemen noticed Campanile in the stolen van as it drove slowly south through Essex Junction, Vt., away from Milton and the Franklin Bank.

At 9:30 A.M. that morning, Campanile and Monks drove into a gas station in St. Johnsbury, Vt., with the still malfunctioning van. They asked that it be repaired and left a deposit of $20 in singles. They also arranged with two local teenagers for a lift back to New Jersey. The two young men were paid $100 for the trip; $40 was in single bills. Appellants insisted on loading the hired automobile themselves; although the car had heavy duty shock absorbers, it rode significantly lower after appellants loaded it. During the trip, Campanile and Monks used the names Joe and Bob. Campanile was dropped off in front of what he said was his brother's house in Paterson, N. J., where he and Monks' insisted upon unloading the car them-

selves. Monks was then driven to a nearby location.[1]

Both defendants raise a variety of points. We will treat Campanile's first. He was arrested on August 17, 1973, by the New York City police on state charges. Approximately 20 hours later, he was transferred to federal custody for questioning on a charge of interstate transportation of a stolen motor vehicle. Shortly thereafter, he stated that he had stolen the van and gone to Vermont to "line up robberies." He admitted taking a Luger handgun with him. On appeal, Campanile argues that these statements should not have been admitted into evidence under 18 U.S.C. § 3501. In particular, he states that his "confession" was automatically involuntary under section 3501(c) because the combined federal-state detention prior to his appearance before a federal magistrate exceeded six hours, plus a reasonable allowance for transportation time, and his confession was made more than six hours after his arrest. Appellant apparently did not make this specific argument below, and we might well refuse to deal with it on that ground alone. However, since the issue of voluntariness was the subject of a suppression hearing, we will consider this specific, as well as the more general, claim.

While we question whether it is proper to add the time spent in state custody to the federal period in this case, see United States v. Johnson, 467 F.2d 630, 637 (2d Cir. 1972), cert. denied, 410 U.S. 932, 93 S.Ct. 963, 35 L.Ed.2d 270, 413 U.S. 920, 93 S.Ct. 3069, 37 L.Ed.2d 1042 (1973); but see United States v. Halbert, 436 F.2d 1226, 1232 (9th Cir. 1970); cf. United States v. Chadwick, 415 F.2d 167, 171 (10th Cir. 1969), we need not resolve the issue here. Violation of the six-hour rule does not automatically make a confession involuntary; rather, it is only one of the many factors

---

1. Neither of the defendants testified at the trial. They did call several witnesses for the purpose of showing that the coins allegedly stolen would have been very heavy and difficult to handle, that the coin wrappers found in

Monks' tackle box might have been obtained from other Vermont banks, and that coins seized from the jars in the bedroom of the apartment Campanile sublet to his brother belonged to his brother and his brother's wife.

to be considered in making that determination. United States v. Johnson, *supra.* The FBI agent who interrogated Campanile stated that prior to federal questioning the defendant was fully apprised of his rights and waived them. While Campanile testified at the voluntariness hearing that at the time of questioning he was going through narcotic withdrawal, the agent testified that he noticed no signs of distress and that, on the contrary, Campanile seemed "very jovial." In light of this evidence, we are not persuaded that Judge Coffrin's finding of voluntariness was clearly erroneous; in fact, we believe it was correct. See United States v. Stone, 472 F.2d 909, 913 (5th Cir. 1973).

■ Campanile also argues that evidence seized pursuant to a warrant from his brother Michael's apartment in Paterson should have been suppressed. After a suppression hearing, at which it was revealed that the apartment was originally leased to defendant (Anthony Campanile) and then subleased by his brother, the court ruled that defendant lacked standing to challenge the search. Not only was the apartment lease still in defendant's name, but also there was evidence that he occasionally stayed at the apartment, still received mail there, and sometimes stored things there with his brother. The standing issue, therefore, is not so easily resolved. In addition, defendant was clearly the object of the search and as such may have standing on that ground alone. See United States v. Mapp, 476 F.2d 67, 71 (2d Cir. 1973). Thus, rather than decide the issue of standing, we will treat the merits of the suppression motion itself, cf. United States v. Cangiano, 491 F.2d 906, 912 (2d Cir.), cert. denied, 419 U.S. 904, 95 S.Ct. 188, 42 L.Ed.2d 149 (1974), and deal with the various arguments Campanile either made in the trial court or to us at oral argument.[2]

Here there was no question that there was sufficient cause to issue the warrant. The two teenagers who drove appellants to New Jersey led the police back to the apartment less than a week later. At oral argument, Campanile made much of the statement in the warrant that it was for the "only basement" apartment at the Paterson address, although the evidence at trial indicated that there may have been two basement apartments. But the police searched only the apartment lived in by defendant's brother, which was the one described in the affidavit that supported the warrant. We do not think this slight variance is enough to make the warrant void on its face, particularly when the agents clearly knew which apartment they were to search. See Steel v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925); United States v. DePugh, 452 F.2d 915, 920 (10th Cir. 1971), cert. denied, 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972). When the agents searched the apartment they found, in addition to items listed in the warrant, cartons of cigarettes bearing Vermont tax stamps and a black case heavy enough to contain rolled coins. When the case was opened, it was found to contain a Luger which was owned, according to Michael Campanile, by his brother Anthony. Since the defendant was known to be a felon, the Luger was clearly contraband. Under the rationale of Coolidge v. New Hampshire, 403 U.S. 443, 465–72, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the cigarettes and Luger were subject to seizure both as evidence discovered by chance in the course of a lawful search, and as stolen goods or contraband. See also United States v. Pacelli, 470 F.2d 67, 70–72 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973).

■ Other items, such as coin wrappers and cleaning equipment that was in

2. While the parties briefed for us only the issue of standing, we do not, as was suggested during argument, require a remand for consideration of the merits. There was a full evidentiary hearing below on the points urged—that the warrant was defective on its face and that the search performed exceeded the scope of the warrant—and we are able to rule on the basis of that record.

the van when stolen, were also discovered during the search but not in the Campanile apartment. Rather, they were found in the trash cans and common areas of the apartment building. Since the superintendent of the building had consented to the search of those areas, seizure of these items was clearly proper.

■ Campanile also argues that admission into evidence of the Luger and equipment found with it was erroneous because these items had no relevance to the crimes charged—nonviolent bank thefts at night. Following his arrest, Campanile admitted that he took the gun with him and, while it was not used, having it along would appear to be a form of criminal insurance for the success of the venture. Thus it was probative of intent. But we do think this evidence was on the borderline of admissibility in view of its tendency to create unfair prejudice. Compare United States v. Baker, 419 F.2d 83, 86–87 (2d Cir. 1969), cert. denied, 397 U.S. 971, 976, 90 S.Ct. 1086, 25 L.Ed.2d 265 (1970). Nonetheless, "the trial judge has wide discretion in this area," United States v. Ravich, 421 F.2d 1196, 1204–05 (2d Cir.), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), and it was not abused here.

■ Campanile also vigorously objects to the admission of testimony by Shirley Brown, a friend of defendant Monks. Ms. Brown testifed that Monks told her in mid-1972 that he and Campanile were going to rob a bank in suburban New Jersey. Campanile objected on the grounds of hearsay but the statement was admitted anyway. On appeal, Campanile claims that the testimony also violated Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The point was not raised below. The Government argues that the statement was admissible under the co-conspirator's exception to the hearsay rule, and, if not, that its admission was harmless error. We fail to see how the co-conspirator rule applies. The statement was made approximately nine months before the crimes charged here, and there is no other evidence of a conspiracy at the earlier time. The Government's second point is valid, however. By the time Ms. Brown testified, the jury had already been told that Campanile had admitted, after his arrest, that he had gone to Vermont to line up robberies. Thus, the Brown testimony that Campanile was considering robbing a bank in 1972 was surplusage as proof that he intended to rob banks in Vermont in 1973. See Brown v. United States, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

■ The final point made by Campanile is that evidence linking appellants to the American Legion break-in should not have been admitted. The rule in this circuit is "that evidence of other crimes is admissible except when offered solely to prove criminal character." United States v. Gerry, 515 F.2d 130, 141 (2d Cir. 1975). This evidence was properly admitted since it tended to show that whoever committed the American Legion theft also broke into the two banks. The Legion Hall was located a short distance from one of the banks robbed the same night. Both were broken into by persons unfamiliar with the premises. In both cases, entry was accomplished by prying a door open, and the instrument used left similar paint marks at both locations. Cigarettes were taken from the Legion, and the defendants told the two boys who drove them back to New Jersey that they had plenty of cigarettes. Cigarette packs of the same brand stolen in Vermont and with Vermont tax stamps were also found in the apartment Campanile sublet to his brother. Moreover, 75 one-dollar bills were taken from the American Legion, and defendants were shown to have paid various persons over $60 in one-dollar bills on the day they returned to New Jersey. All of this was sufficient to justify an inference that defendants were connected with all the unusual events of the night. Evidence tending to show that the defendants committed the theft at the American Legion was probative of who had committed the two bank thefts

charged and that all were part of a single criminal escapade. Cf. United States v. Johnson, 382 F.2d 280, 281 (2d Cir. 1967).

### III.

 Monks raises some points not already discussed. He challenges evidence that showed that the van was stolen as being irrelevant to the bank robberies charged. But those engaged in such activity often use stolen vehicles to avoid detection through automobile registrations. Similarly, admission of a "slap hammer"—a tool that can be used to pull door locks—that was found in Monks's car was proper in that it tended to tie Monks to the van theft and to negate an innocent reason for being in Vermont. Monks also complains of the admission of cleaning equipment stolen with the van and found in Michael Campanile's apartment building. The equipment was relevant to show that Anthony Campanile had stolen the van and thus added details to the plan to rob banks in another state.

The court permitted Andrew King, an acquaintance of Monks, to testify that on two occasions King had participated in exchanges of large amounts of coin between Monks and another. One was a transfer of approximately $2,000 in coin in June 1973; this could obviously have been money taken from the Vermont banks the month before. The other incident was a similar transfer a few months earlier involving approximately $5,000. Monks argues that evidence of the $5,000 transaction was prejudicial and should have been excluded. But having prior experience in fencing large numbers of coins would be relevant to a charge of stealing them from a bank. The ordinary citizen would be ill-prepared to dispose of thousands of stolen coins, and thus Monks's prior special experience was relevant. United States v. Craft, 407 F.2d 1065, 1069–70 (6th Cir. 1969).

Finally, Monks also objects to the testimony of Shirley Brown regarding his contemplated 1972 bank robbery in New Jersey. While the hearsay objection available to Campanile, discussed above, did not apply to this admission by Monks, that was not the basis for the latter's objection. Rather, Monks argued that the statement was of no relevance to the crimes charged and could only create prejudice against him in the eyes of the jury. The evidence might well have been excluded. Nonetheless, the error, if any, must be considered in light of the overwhelming evidence properly admitted. We are convinced that the Shirley Brown testimony was harmless beyond a reasonable doubt. See United States v. Semensohn, 421 F.2d 1206, 1208 (2d Cir. 1970); United States v. Chason, 451 F.2d 301, 305 (2d Cir. 1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479 (1972).

Judgments affirmed.