**UNITED STATES of America, Appellee,**

v.

**John DOE a/k/a Ed, a/k/a Edward Carr, Appellant.**

No. 82–5194.

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1982.

Decided March 31, 1983.

Rehearing Denied May 27, 1983.

J. Alan Johnson, U.S. Atty., Constance M. Bowden, Paul J. Brysh (argued) Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Stanton D. Levenson (argued), Pittsburgh, Pa., for appellant.

Before GIBBONS, HIGGINBOTHAM, and BECKER, Circuit Judges.

### OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the question whether an arrest warrant containing a constitutionally insufficient description of a suspect is cured if the law-enforcement agent who executes the warrant has independent personal knowledge that the arrestee is the person for whom the warrant was intended. We hold that the warrant is not so cured; that an arrest requiring a nonconsensual entry into the suspect's home and made on the strength of the defective warrant is

void; and that the district court erred in denying motions to suppress evidence obtained as a result of appellant's arrest under such circumstances.

## I.

On December 12, 1979, Special Agent Frank Schmotzer, of the Federal Drug Enforcement Administration, purchased approximately one-half of an ounce of cocaine from Paul Ionadi and appellant Edward Carr. At the time, Schmotzer knew Carr only as "Ed." Ionadi was arrested on October 2, 1980. On October 31, 1980, Ionadi and John Doe, a/k/a "Ed," were indicted by a federal grand jury in the Western District of Pennsylvania for distributing cocaine in violation of 21 U.S.C. § 841(a)(1) (1976) and 18 U.S.C. § 2 (1976).[1] Pursuant to the indictment, a magistrate issued a bench warrant that same day; the warrant described its subject only as: "John Doe a/k/a Ed."

"Ed" remained at large for almost a year, until Agent Schmotzer learned from a confidential source that Ionadi had a friend named Eddie Carr, whose description fit "Ed" from whom Agent Schmotzer had bought cocaine in December 1979. When Agent Schmotzer obtained a picture of Edward Carr from the Pittsburgh Police Department on October 5, 1981, he recognized Carr as "Ed."

At approximately 9:45 A.M. the following morning, Agent Schmotzer and Agent Edward Cassidy went to appellant's residence. Agent Schmotzer knocked on the door. When appellant opened the door, Agent Schmotzer held the door open, identified himself as a narcotics agent, and told appellant that he had a warrant for his arrest. Appellant thereupon admitted the agents, who placed him under arrest. Appellant then made some incriminating statements, including an admission that led to the seizure of a gun from his apartment.

Following his arraignment, appellant entered a plea of not guilty; he also moved to suppress the statements he had made and the evidence (the gun) that had been seized, claiming that they were fruits of an illegal arrest based on an invalid warrant. The district court denied appellant's motion, holding that the mere lack of a description in the arrest warrant would be unnecessary in this case, where "the agent made the buy and ... therefore could identify the Defendant and where the agent had made a positive identification before he attempted to execute the arrest warrant." Proceedings of Defendant's Motion to Suppress, *United States v. John Doe a/k/a Ed (Edward Carr)*, No. 80–174, tr. at 26 (W.D.Pa. Dec. 15, 1981). Appellant thereafter entered a conditional plea of guilty, reserving the right to appeal the suppression ruling.[2] The district court accepted the plea and sentenced appellant to three years in prison followed by a special parole term of three years. This appeal followed.

## II.

In *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980), the Supreme Court held that, absent exigent circumstances, "the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." The Government does not argue that the entry was consensual and conceded at oral argument that if the warrant is invalid, the arrest was illegal under *Payton*. We thus need to decide only whether the description in the warrant was sufficient to satisfy the requirements of the fourth amendment and, if not, whether Agent Schmotzer's independent knowledge that appellant was the person named in the warrant could supplement the description to satisfy constitutional requisites. A finding of illegality would require suppression of all fruits of the arrest.

---

1. Ionadi subsequently entered a plea of guilty and was sentenced. He is not a party to this appeal.

2. We approved the use of conditional guilty pleas in *United States v. Moskow*, 588 F.2d 882 (3d Cir.1978), and *United States v. Zudick*, 523 F.2d 848 (3d Cir.1975).

The fourth amendment mandates that the issued warrant "particularly describ[e] ... the persons or things to be seized"; Fed.R.Crim.P. 4(c)(1) provides that a warrant "shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty," and this Rule has been read as a gloss on the fourth amendment, *Wong Sun v. United States,* 371 U.S. 471, 481 n. 9, 83 S.Ct. 407, 414 n. 9, 9 L.Ed.2d 441 (1963);[3] *Giordenello v. United States,* 357 U.S. 480, 485, 78 S.Ct. 1245, 1249, 2 L.Ed.2d 1503 (1958). This "reasonable certainty" requirement both insures that a sufficient showing of probable cause has been made to the issuing magistrate and minimizes the risk of error by the executing officer. Because the police are directly "engaged in the often competitive enterprise of ferreting out crime," the fourth amendment requires "that ... inferences be drawn [instead] by a neutral and detached magistrate ...." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

"John Doe" warrants fail to honor the principles embedded in the fourth amendment and Rule 4: even assuming that the officer swearing out a "John Doe" warrant has demonstrated probable cause to arrest someone, the warrant, by its terms, will allow the executing officer to make his own inferences in effecting an arrest. For these reasons, "John Doe" warrants consistently have been held illegal. *See, e.g., West v. Cabell,* 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894); *United States v. Jarvis,* 560 F.2d 494 (2d Cir.1977), *cert. denied,* 435 U.S. 934, 98 S.Ct. 1511, 55 L.Ed.2d 532 (1978); *United States v. Swanner,* 237 F.Supp. 69 (E.D.Tenn.1964); *United States v. $1,058 in U.S. Currency,* 210 F.Supp. 45, 49 (W.D.Pa. 1962), *aff'd on other grounds,* 323 F.2d 211 (3d Cir.1963).

The warrant at issue here differs from a simple "John Doe" warrant only insofar as it contains the first name "Ed." We do not think that this additional piece of information renders the warrant sufficiently specific to satisfy the fourth amendment.[4] The Government concedes, at least implicitly, that the warrant for "John Doe a/k/a 'Ed'" does not on its face meet the requirements of Rule 4(c)(1) and the fourth amendment. Rather, the Government contends that facial insufficiency of a warrant can be "cured" by extrinsic evidence showing to a reasonable certainty that the person arrested is in fact the person for whom the warrant was issued.[5]

The Government finds support for this argument in *United States v. Hirschhorn,* 649 F.2d 360 (5th Cir.1981), which involved an arrest warrant issued for a "Theilen," the name that IRS agents thought appellant Hirschhorn used. Claiming that the

**3.** In *Wong Sun,* the Supreme Court held that the requirements of Rule 4 apply with equal force to search warrants and arrest warrants. *Id. See also Payton v. United States, supra,* 445 U.S. at 585, 100 S.Ct. at 1379.

**4.** While warrants containing no name or only a first name have been upheld, those warrants bore on their face descriptions allowing the executing officer to determine "with reasonable certainty" whom he was to arrest. *See, e.g., United States v. Muckenthaler,* 584 F.2d 240 (8th Cir.1978) ("persons and/or baggage being met at Eppley Airfield, Omaha, Nebraska, by Roger Strubble on the evening of June 7, 1977"; warrant sufficient based on informant's statement that Strubble would meet drug seller at time and place specified); *United States v. Ferrone,* 438 F.2d 381 (3d Cir.), *cert. denied,* 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971) ("John Doe, a white male with black wavy hair and stocky build observed using the telephone" in a particular apartment; warrant sufficient based on physical description plus location). See generally 2 W. LaFave, *Search and Seizure,* § 4.5(e), at 90–91 (1978 & Supp.1983).

**5.** The record reveals the existence of a second warrant, describing the suspect sought as "John Doe a/k/a Ed, described as white male, approx. 30–35 years old, approx. 6' tall, approx. 175 lbs." Appendix to Appellant's brief, page A–8 (pages are unnumbered). Unlike the warrant at issue, this second warrant is neither signed nor dated. The Government concedes that this was not the warrant executed by Agent Schmotzer. Indeed, the Government suggests that there is some doubt whether this warrant was ever issued and disclaims any reliance on it in this appeal. Government's Brief at 3–4, n. 3. Thus, the second warrant is not before us, and we intimate no views as to its adequacy.

warrant was invalid, appellant moved to suppress statements he had made following his arrest. The motion to suppress was untimely, and the district court refused to grant the requested relief. The Fifth Circuit affirmed, finding no abuse of discretion. In so doing, however, the court stated that suppression would not have been justified even had appellant's motion been timely filed. The Fifth Circuit reasoned that the arresting agents had established probable cause to seize a man they believed to be named "Theilen," and they had obtained a warrant on that basis. The fact that "Theilen's" real name turned out to be Hirschhorn was, the court declared, immaterial so long as the agents thought in good faith that they were arresting "Theilen." We think *Hirschhorn* is distinguishable from the case before us.

No matter how detailed the written description on a warrant is, extrinsic information will be necessary to execute it. For instance, if a warrant authorizes seizure of "Chippendale furniture," the executing officer must know independently of the warrant what "Chippendale furniture" is. Similarly, if the warrant refers to an address, the officer must know how to reach that address; if a name is given, some extrinsic information necessarily must be used to identify the person who goes by the given name. For fourth amendment purposes, the issue is *how much* information must be supplied by the warrant. The written de-

scription cannot conceivably eliminate all possibilities of erroneous execution, nor does the fourth amendment so require. What the arrest warrant must contain is "the name of the defendant or, if his name is unknown, any name or description by which he can be described *with reasonable certainty*." Fed.R.Crim.P. 4(c)(1) (emphasis added).

Assuming that "Theilen" was the only description on the warrant in *Hirschhorn*, that description at the very least eliminated most people as potential subjects. Indeed, the agents thought they had seized Theilen when they arrested Hirschhorn. The facts of *Hirschhorn* thus differ significantly from those before us. The "John Doe" warrant in this case does *not* reduce to a tolerable level the number of potential subjects: anyone with the first name "Ed"—and there must be thousands of "Eds" in the Pittsburgh area—is fair game. A name and description by which appellant reasonably can be identified here was supplied by the arresting officer solely from his independent knowledge. *Hirschhorn* apparently would allow good-faith reliance on a warrant that particularly identifies the person to be arrested, but by the *wrong* name; however, that case did not involve reliance on extrinsic information to establish the minimum description required by the fourth amendment.[6]

This distinction was recognized in *Powe v. City of Chicago*, 664 F.2d 639, 647 (7th Cir.1981):

---

6. Similar consideration disposes of two other cases relied upon by the Government. In *United States v. Campanile*, 516 F.2d 288 (2d Cir. 1975), the court upheld a warrant to search the "only basement" apartment at a given address, despite evidence at trial suggesting that there actually were two basement apartments at that address. An affidavit supporting the warrant described the correct apartment; moreover, appellant's brother lived there. The court termed the possibly imprecise reference a "slight variance," *id.* at 291; at most, only two apartments were potential subjects of the search. Had the supporting affidavit been incorporated into the warrant, the description in the supplemented warrant would have enabled the executing officer to distinguish even between those two apartments. (The case does not state whether the affidavit was so incorporated.) Even absent the affidavit, the elimination of all but two apartments, one of which was occupied by appellant's brother, was far more specific than is the warrant at issue here.

In *United States v. Johnson*, 541 F.2d 1311 (8th Cir.1976) (per curiam), the court considered a warrant describing objects to be seized as "parphenrnalia" [sic]. The court held that this description, when juxtaposed with the previous word, "marijuana," sufficed to established a reasonably clear reference to drug paraphernalia, given the customary usage of the term in the "drug community." Although the court also relied on the fact that the executing officers "defined 'paraphernalia' as objects used in the sale or use of controlled substances .... indicat[ing] that they were in fact aware of what items were authorized to be seized," *id.* at 1315, we think that the court relied principally on the meaning of the terms used·in the warrant itself.

We do not hold that every arrest is necessarily invalid whenever it incorrectly names the intended arrestee and contains no other description of him. A case may be hypothesized in which the authorities responsible for preparing the warrant have good reason to believe that the name on the warrant is the real name of the intended arrestee, and have no reason to suspect otherwise. Our holding here is not addressed to such a case. In this case our holding is simply that where, as is alleged here, the authorities had reason to suspect that the name placed on the warrant was not the real name of the intended arrestee, sufficient to identify him, must be included in the warrant.

The hypothetical case reserved by the *Powe* court greatly resembles the facts of *Hirschhorn;* like the Seventh Circuit, we do not have that case before us.

The Government relies primarily on the particular circumstances of this case, arguing that, on these unique facts, the purposes underling the fourth amendment have been satisfied. First, the Government contends that the indicting grand jury had made an independent determination of probable cause to arrest appellant, because the grand jury had had before it the testimony of Agent Schmotzer when it indicted "John Doe." Inasmuch as Agent Schmotzer made his arrest on the basis of the same information that he had given to the grand jury, the argument goes, the independent determination policy behind the fourth amendment and Rule 4 has been satisfied.

The position here taken by the Government has not often been addressed. However, in *United States v. Jarvis, supra,* the Second Circuit considered an analogous argument and expressly precluded reliance on the extrinsic knowledge of the officer executing the warrant.

The court below held that even though the warrant did not contain a name or description by which the defendant could be identified with reasonable certainty, as required under Rule 4(c)(1), Fed.R. Crim.P., the warrant was valid because

"extrinsic evidence" was available which provided clear, sufficient identification of the defendant. We cannot agree that such extrinsic evidence may be used to validate an otherwise invalid warrant. The warrant requirement exists in order to permit a neutral magistrate to make the decision whether to authorize arrest, rather than leaving this decision up to the prosecutor or officer. *Gerstein v. Pugh,* 420 U.S. 103, 112 [95 S.Ct. 854, 862, 43 L.Ed.2d 54] ... (1975); *Johnson v. United States,* 333 U.S. 10, 13–14 [68 S.Ct. 367, 368–69, 92 L.Ed. 436] ... (1948). *Gerstein* and *Johnson* involved determinations of probable cause, but the same principles are applicable here. Even where an indictment has been handed down and there is a presumption of probable cause, a warrant requirement remains. Fed.R.Crim.P. 9(b)(1). If the prosecution were permitted to arrest on the basis of "John Doe" warrants supplemented by extrinsic evidence, the requirement for a particularized warrant, issued by a magistrate, would become a nullity.

560 F.2d at 497 (footnotes omitted). *Jarvis* provides appellant with the answer to the Government's contention.

Although in both *Jarvis* and this case the warrant was issued on the basis of a grand jury indictment, the Government attempts to distinguish *Jarvis* on its facts. The Government contends that the extrinsic information used in *Jarvis* to confirm the identity of the arrestee became known to the police only after the indictment was handed down, whereas the grand jury in the case before us had available the information upon which Agent Schmotzer relied in arresting appellant. Thus, according to the Government, the requirement that probable cause be found by an independent magistrate or grand jury could not have been met in *Jarvis* but was met here.

We will assume that the grand jury had before it a description more specific than that shown on the face of the bench warrant.[7] That fact alone, however, cannot satisfy the fourth amendment, which

---

**7.** The same description found in the bench warrant discussed in note 5, *supra,* was also pro-

dictates that a magistrate may not issue a warrant authorizing a search and seizure which exceeds the ambit of the probable cause showing made to him. "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.6 at 97 (1978). *United States v. Christine,* 687 F.2d 749, 753 (3d Cir.1982) (footnote omitted). Moreover, although this warrant may have been supported by probable cause sufficient to have allowed the arrest of appellant, the probable-cause requirement is only one of those embodied in the fourth amendment. In *Christine, supra,* 687 F.2d at 756, we identified five functions served by the fourth amendment. Two of these purposes are relevant here: the terms of the warrant serve "to limit the scope of the intrusion" and to "notify[ ] the subject of the search that his privacy must yield to the public's need for law enforcement." *Id.* These functions relate, respectively, to the arresting officer and to the subject of the arrest. If the face of the warrant does not specify who or what is to be seized, the officer executing the warrant is free to define the warrant's contours, subject only to his own (presumably good-faith) beliefs, while the subject has no way of determining whether the warrant is properly limited in scope or whether the executing officer has exceeded the bounds of his authority. As much as to assure the existence of probable cause, the warrant requirement is designed to inform both the subject and the executing officer of the scope of action to be taken based on that probable cause. These fourth amendment policies, we think, demand that the specific description expressly appear on the face of the warrant.

Finally, the Government submits, because Agent Schmotzer's eyewitness testimony about the original drug transaction was

what provided probable cause to the indicting grand jury, Agent Schmotzer, as the executing officer, necessarily knew the scope of that probable cause—i.e., precisely who was to be arrested. The Government thus urges what might be said to be a narrow exception to the warrant specificity requirement, applicable in the unique case where an arrest on a facially invalid warrant is made by the very officer whose testimony provided the magistrate or grand jury with the probable cause that allowed the warrant to issue. Aside from the fact that this argument is at odds with the fourth amendment concern that the subject himself be apprised of the scope of the warrant, we cannot accept the Government's contention. To do so would still vest in the arresting officer the discretion to determine the scope of a warrant.

We cannot escape the fact that, in this case, it was Agent Schmotzer, and not the grand jury or the magistrate, who ultimately determined that appellant was the person named in the indictment and the bench warrant. The Government's argument thus boils down to an assertion that an officer in whose presence a felony is committed can dispense with the independent evaluation of probable cause otherwise mandated by the fourth amendment and, on his or her own knowledge, forcibly enter a suspect's house to effect an arrest. We think that *Payton v. New York, supra,* dictates otherwise. We therefore will vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

---

vided in an affidavit signed by Agent Schmotzer, dated October 2, 1980. The grand jury returned its indictment of Paul Ionadi and "John Doe a/k/a Ed" on October 31, 1980. It

therefore seems likely that the grand jury had this description in front of it, either through Agent Schmotzer's affidavit or through his testimony.