NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 11-3848

———————————

UNITED STATES OF AMERICA

v.

NISIA KEVIN DUNAWAY,
a/k/a "BLIZZ,"

                              Appellant

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-10-cr-00032-001)
District Judge:  Honorable Kim R. Gibson

———————————

Submitted Under Third Circuit LAR 34.1(a)
April 24, 2012

———————————

Before: SLOVITER, ROTH, *Circuit Judges*,
and POLLAK, *District Judge**

(Opinion filed: May 22, 2012)

———————————

OPINION

———————————

---

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.  Judge Pollak died on May 8,
2012.  This opinion is filed by a quorum of the court pursuant to 28 U.S.C. § 46 and
Third Circuit IOP 12.1(b).

PER CURIAM.

Police officers of the Cambria County Drug Task Force executed a warrant to search the person and suitcase of appellant Nisia Kevin Dunaway on April 10, 2010. The officers found 171 grams of crack cocaine in Dunaway's suitcase. He was subsequently indicted by a federal grand jury for one count of knowing and intentional possession of 50 or more grams of cocaine base with intent to distribute. 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) (2006).[1] Prior to trial, Dunaway moved to suppress the evidence obtained in the April 10 search on the ground that the warrant was defective. The District Court denied the motion. Dunaway then entered a plea of guilty conditional on his right to appeal from the order denying his motion to suppress, Fed. R. Crim. P. 11(a)(2), and he now exercises his right to appeal. We will affirm.

**I.**

The disputed search warrant was issued upon the application of an officer of the Cambria County Drug Task Force on April 10, 2010. According to the officer's affidavit in support of the search warrant, a confidential informant (referred to as "C1") had

---

[1] At the time of Dunaway's conduct, 21 U.S.C. § 841(b)(1)(A)(iii) required a mandatory minimum prison sentence of at least 10 years for offenses involving 50 or more grams of cocaine base. On August 3, 2010, § 841(b)(1)(A)(iii) was altered to apply only to offenses involving 280 or more grams of cocaine base. Fair Sentencing Act ("FSA") of 2010, Pub. L. No. 111-220, § 2(a)(1), 124 Stat. 2372, 2372; *see also United States v. Dixon*, 648 F.3d 195, 203 (3d Cir. 2011) (holding that FSA applies to all defendants sentenced on or after August 3, 2010). *But see Dorsey v. United States*, 635 F.3d 336, 339-40 (7th Cir.) (holding that FSA applies only to offenses committed after August 3, 2010, regardless of date of sentencing), *cert. granted*, 132 S. Ct. 759 (2011) (argued Apr. 17, 2012). Under the FSA amendments, an offense involving 171 grams of cocaine base would now result in a mandatory minimum sentence of only 5 years. In the present case, the District Court entered a judgment on October 11, 2011, sentencing Dunaway to 63 months of imprisonment and 4 years of supervised release.

arranged to pick up a man named "Blizz" at the Johnstown, Pennsylvania, train station on the evening of April 10, 2010, at 6:00 pm, when Blizz would be returning from Philadelphia with a suitcase. The officer reported that C1 had been told by Blizz that he (Blizz) would be traveling "loaded down," which C1 understood to mean that Blizz would be in possession of crack cocaine. The officer further reported that C1 would be at the train station to identify Blizz to the police.

The officer's affidavit identified C1 by name and stated that C1 "has provided reliable information to this AFFIANT and the Cambria County Drug Task Force in the past. This information has lead [sic] to several arrests and convictions." The affidavit also detailed several prior occasions in March 2010 on which C1 allegedly purchased crack cocaine from Blizz in the Johnstown area.

Finally, the affidavit indicated that the police had taken the following additional investigative steps: (1) verifying the identity of an intermediary through whom C1 claimed to have met and initially done business with Blizz; (2) confirming that C1's phone records were consistent with C1's claims regarding phone calls to and from Blizz; (3) confirming the train schedule from Philadelphia to Johnstown; and (4) obtaining a written statement from C1 detailing C1's putative knowledge of Blizz's drug trafficking.

The warrant was issued on April 10, 2010, at 5:00 pm, by a judge of the Court of Common Pleas of Cambria County, Pennsylvania. (The face of the warrant indicates that the application was also reviewed and approved by the District Attorney's office.) The warrant identifies the following "premises and/or person to be searched":

3

The person of BLIZZ and any and all suitcases, packages and or any other unknown persons and suitcases and or packages that would be with BLIZZ. BLIZZ is a black male approx 6' to 6'3 medium skin color, facial hair, medium build, short dark to black hair, to be arriving in Johnstown by train at or about 600 pm this date.

It is undisputed that appellant Nisia Dunaway, carrying a suitcase, arrived by train at Johnstown at approximately 6:00 pm on April 10, 2010. He was met there by C1. After shaking hands with C1, Dunaway placed his suitcase in C1's car. The police then converged on the car and executed the search warrant. They recovered 171 grams of crack cocaine from Dunaway's suitcase.

## II.

Dunaway argues on appeal that the District Court should have suppressed the evidence recovered in the April 10 search for two reasons. First, Dunaway claims that the warrant failed to describe the person or place to be searched with particularity and was thus an unlawful "general warrant." Second, Dunaway argues that there was insufficient probable cause to issue the search warrant because the affidavit of probable cause failed to establish the reliability of C1, the confidential informant.

Both arguments were considered and rejected by the District Court after a hearing. The District Court also held, in the alternative, that suppression was not justified under the circumstances because the officers had relied on the warrant in good faith. Neither party put forth any evidence at the suppression hearing, and the District Court made no findings of fact.

In the absence of fact-finding, our review of the denial of a motion to suppress is plenary. *United States v. Leveto*, 540 F.3d 200, 211 n.9 (3d Cir. 2008); *see also United*

4

*States v. Williams*, 3 F.3d 69, 71 n.2 (3d Cir. 1993) (plenary review of the application of the good faith doctrine). "[W]e apply the same standard the District Court was required to apply and determine whether the magistrate who issued the warrant had a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002).

### A.

The Fourth Amendment was adopted in part to prohibit the issuance of writs of assistance, colonial era warrants that authorized "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). To prevent such unfettered rummaging, the Fourth Amendment requires that every warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "The particularity requirement 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing it.'" *United States v. Christine*, 687 F.2d 749, 752-53 (3d Cir. 1982) (alteration in original) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).

The pejorative label of "general warrant" has typically been associated with warrants that fail or allegedly fail to describe *what to seize* with the requisite particularity. *See Christine*, 687 F.2d at 753 (collecting cases of warrants "condemn[ed] as general warrants" because list of items to be seized lacked particularity).[2] Dunaway does not

---

[2] For other efforts by defendants to challenge warrants as "general warrants" on the ground that the warrants authorized seizure of such a broadly worded category of

5

make such a challenge in his appeal.  Instead, he argues that the search warrant failed to describe *where to search* with the requisite particularity.

The Fourth Amendment's particularity clause requires that a warrant describe the place to be searched in sufficient detail "that the executing officer can with reasonable effort identify the precise place intended."  *United States v. Busk*, 693 F.2d 28, 30 (3d Cir. 1982) (citing *Steele v. United States No. 1*, 267 U.S. 498, 503 (1925)).  The Constitution demands no less when the warrant authorizes the search of a person: "the individual to be searched must be described with such particularity that he may be identified with reasonable certainty" by the officer executing the warrant.  2 Wayne R. LaFave, *Search and Seizure* § 4.5(e), at 598 (4th ed. 2004); *see United States v. Doe*, 703 F.2d 745, 747 (3d Cir. 1983) (discussing "reasonable certainty" requirement for particularity in warrant's description of person to be seized); *United States v. Ferrone*, 438 F.2d 381, 389 (3d Cir. 1971) (discussing particularity of search warrant).

Here, the warrant did not include the appellant's proper name, Nisia Dunaway, referring to him instead merely as "BLIZZ."  But the warrant did provide a physical description of him, including his height, skin color, hair style and color, and build—

---

evidence as to license "exploratory rummaging" by the executing officers, see *United States v. Tracey*, 597 F.3d 140, 151, 153-54 (3d Cir. 2010); *Leveto*, 540 F.3d at 204, 211; *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 148-49 (3d Cir. 2002).  In all of these cases, including *Christine*, the warrant was found not to be a general warrant.

though not, as Dunaway points out, his age. Further, the warrant specified that he would be found arriving by train in Johnstown at 6:00 pm on April 10, 2010.[3]

The warrant's physical description of "Blizz" and the specific location where he would be found at a precise time were, together, sufficiently particular that an executing officer could identify the appellant with reasonable certainty. *Compare Doe*, 703 F.2d at 747 (holding that warrant to arrest "John Doe a/k/a 'Ed'" was unconstitutional for lack of particularity), *with Ferrone*, 438 F.2d at 389 (upholding search of defendant's person pursuant to warrant to search "John Doe, a white male with black wavy hair and stocky build observed using the telephone in Apartment 4-C 1806 Patricia Lane, East McKeesport, Pennsylvania"). *See also* 2 LaFave, *supra*, § 4.5(e), at 598 n.134 (collecting cases). Thus, we reject Dunaway's contention that the warrant to search his person was so lacking in particularity as to be an unlawful general warrant.

---

[3] The affidavit of probable cause contained additional information from which an executing officer could be reasonably certain of identifying the correct individual to search—notably, the detail that Blizz would be met by C1 at the train station. *Cf. United States v. Muckenthaler*, 584 F.2d 240, 245-46 (8th Cir. 1978) (search warrant limited to those persons being met by informant at airport), *cited in Doe*, 703 F.2d at 747 n.4.

We decline to rely on the affidavit, however, because it is unclear in the record whether the affidavit was incorporated by reference into the warrant. The District Court found that the warrant incorporated the affidavit because the warrant lists the total number of pages in the affidavit and indicates that the warrant was issued upon consideration of the affidavit. But the defendant points out the warrant also indicates that the affidavit was to be sealed for 60 days. "[F]or an affidavit to cure a warrant's lack of particularity, the words of incorporation in the warrant must make clear that the section lacking particularity is to be read in conjunction with the attached affidavit." *Tracey*, 597 F.3d at 149; *see also Bartholomew v. Pennsylvania*, 221 F.3d 425, 429-30 (3d Cir. 2000) (holding that incorporated but sealed affidavit cannot save warrant that otherwise lacks particularity). Because we do not rely on the affidavit, we need not resolve this uncertainty.

**B.**

Dunaway's alternative argument—that the search warrant failed to establish the reliability of the government's informant—is also unpersuasive. To begin, our task is merely to determine whether the issuing magistrate had a substantial basis for determining that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236-37 (1983). In addressing that question, we are mindful that, when the government relies on an informant to establish probable cause, the informant's "reliability" and "basis of knowledge" are both "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for . . . by a strong showing as to the other." *Id.* at 233.

The affidavit of probable cause in this case provided, as a basis for C1's knowledge, a specific description of C1's prior purchases of crack cocaine from Dunaway ("Blizz") on March 13 and March 26, 2010. The affidavit also provided a description of C1's phone calls with Dunaway to arrange the train station meeting on April 10, 2010. As to reliability, the affidavit stated—albeit in general terms—that C1 had provided reliable information to the police in the past. Further, the affidavit identified C1 by name. *Cf. United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002) ("[O]ne of the characteristics of a known informant that contributes to reliability is that he or she can be held responsible if the allegations turn out to be fabricated."); *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005) ("An informant's tip is considered to have greater reliability . . . if the affidavit avers that the name of the confidential informant has been disclosed to the issuing judge."). And, finally, the affidavit details

8

several steps the police took to corroborate details of C1's information. *Cf. Gates*, 462 U.S. at 244 (corroboration of even non-inculpatory portions of informant tip can bolster informant's reliability). There was more than enough in the affidavit to provide a substantial basis to issue the warrant.

Lastly, even if the magistrate judge had erred in issuing the warrant, the executing officers would have been entitled to rely on it in good faith. *United States v. Leon*, 468 U.S. 897, 922-23 (1984). "Ordinarily, the mere existence of a warrant suffices to prove that an officer conducted a search in good faith, and will obviate the need for any deep inquiry into reasonableness." *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (internal quotation marks and alteration omitted); *see also Zimmerman*, 277 F.3d at 436-37 (listing four situations in which officers cannot rely on warrant in good faith). We have concluded that the affidavit provided a substantial basis for determining that probable cause existed to search Dunaway's person and suitcase for crack cocaine on April 10. It follows that, after the issuance of the warrant by a judge, it was reasonable for the executing officers to believe that the warrant was supported by probable cause.

**III.**

For the foregoing reasons, we conclude that the District Court correctly denied Dunaway's motion to suppress. We will affirm the judgment of the District Court.