Zel M. Fischer, Chief Justice, dissenting.
Detective Estes sought to search for and seize the following items:
Coach Purse that is silver with C's on it; a Coach purse with purple beading; Prada purse black in color; larger Louis Vuitton bag; Toshiba Satellite laptop limited edition silver with black swirls on it; Vintage/costume jewelry several items had [M.G.] engraved on them; Coach, Lv, Hermes, Bestie Sunglasses; Passport and Social Security card [belonging to M.G.]; Social Security Card/Birth Certificate [belonging to M.G.'s son]; Various bottles of perfume make up brushes and Clinique and Mary Kay make up sets; Keys not belonging to property or vehicle at scene; and Any property readily and easily identifiable as stolen.
These items were expressly listed in both the "AFFIDAVIT/APPLICATION FOR SEARCH WARRANT" (hereinafter, "application for the search warrant"), and the "Search Warrant" itself. Nothing in the application for the search warrant referenced a "Deceased human fetus or corpse, or part thereof[.]" The search warrant listed five specific categories, with a box next to each category to check if there was probable cause to search for the category. These five categories are found on every form search warrant. Such forms track the language contained in § 542.271, RSMo 2000. Importantly, preceding the five categories was an express reference to the application for the search warrant, which provided, "Based on information provided in a verified application/affidavit , the Court finds probable cause to warrant a search for and/or seizure of the following[.]" (Emphasis added). Then, the five specific categories were listed as follows:
• Property, article, material or substance that constitutes evidence of the commission of a crime;
• Property that has been stolen or acquired in any manner declared an offense;
• Property for which possession is an offense under the laws of this state;
• Any person for whom a valid felony arrest warrant is outstanding;
• Deceased human fetus or corpse, or part thereof[.]
The boxes next to all five categories were checked, and the search warrant was signed by the issuing judge. The fifth box should not have been checked because there was no information in the application for the search warrant to support a probable cause finding for that category.[1] That *200 then begs the question of whether the circuit court erred in suppressing all evidence seized when there was probable cause to search for most, but not all, of the categories described in the search warrant.
Whether a search is "permissible and whether the exclusionary rule applies to the evidence seized" are questions of law that are reviewed de novo. State v. Johnson , 354 S.W.3d 627, 632 (Mo. banc 2011).
"Whether the exclusionary sanction is appropriately imposed in a particular case ... is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." United States v. Leon , 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal quotation marks omitted). To be sure,
[o]nly the former question is currently before us, and it must be resolved by weighing the costs and benefits of preventing the use in the prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be [partially] defective.
Id. at 906-07.[2]
The Supreme Court of the United States has "never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment." United States v. Karo , 468 U.S. 705, 712, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). And, "[n]ot every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant." United States v. Hamilton , 591 F.3d 1017, 1027 (8th Cir. 2010). Indeed, "[f]rom a policy perspective[,] a rule requiring blanket invalidation of overbroad warrants would seem ill advised." United States v. Riggs , 690 F.2d 298, 301 (1st Cir. 1982). A search warrant passes constitutional muster if there is: (1) probable cause to believe that the place to be searched will contain evidence of a crime; and (2) sufficient particularity of the description of the place to be searched and the items to be seized. U.S. Const. amend. IV ; Mo. Const. art. I, sec. 15. It is undisputed the "corpse category" on the search warrant lacked probable cause. On the other hand, however, it is also undisputed probable cause did exist to support a search for the other categories identified in the search warrant. The items for those categories were further described in the search warrant as:
Coach Purse that is silver with C's on it; a Coach purse with purple beading; Prada purse black in color; larger Louis Vuitton bag; Toshiba Satellite laptop limited edition silver with black swirls on it; Vintage/costume jewelry several items had [M.G.] engraved on them; Coach, Lv, Hermes, Bestie Sunglasses; Passport and Social Security card [belonging to M.G.]; Social Security Card/Birth Certificate [belonging to M.G.'s son]; Various bottles of perfume make up brushes and Clinique and Mary Kay make up sets; Keys not belonging to property or vehicle at scene; and Any property readily and easily identifiable as stolen.
*201 It is also undisputed the description of these items satisfied the particularity requirement.[3] Therefore, only part of the search warrant-rather than all of it-was invalid.[4] When that is the case, a circuit court faced with a motion to suppress must consider the severability doctrine.[5]
Under this doctrine,
[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized-on plain view grounds, for example-during ... execution [of the valid portions] ).
Sells , 463 F.3d at 1150 (internal quotation marks omitted). Courts "apply a multiple-step analysis to determine whether severability is applicable." Id. at 1151. First, the search warrant is divided "in a commonsense, practical manner into individual clauses, portions, paragraphs, or categories." Id. Then, "the constitutionality of each individual part [is evaluated] to determine whether some portion of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment." Id. "If no part of the warrant particularly describes items to be seized for which there is probable cause, then severance does not apply, and all items seized by such a warrant should be suppressed." Id.
"If, however, at least a part of the warrant is sufficiently particularized and supported by probable cause," then a court must "determine whether the valid portions are distinguishable from the invalid portions." Id. "If the parts may be meaningfully severed, then [a court must] look to the warrant on its face to determine whether the valid portions make up 'the greater part of the warrant,' by examining both the quantitative and qualitative aspects of the valid portions relative to the invalid portion." Id. Ultimately,
[i]f the valid portions make up "the greater part of the warrant," then we *202 sever those portions, suppress the evidence seized pursuant to the portions that fail to meet the Fourth Amendment's warrant requirement, and admit all evidence seized pursuant to the valid portions or lawfully seized during execution of the valid portions.
Id.
The search warrant in this case can be easily divided into the following categories of evidence: (1) "Property, article, material or substance that constitutes evidence of the commission of a crime;" (2) "Property that has been stolen or acquired in any manner declared an offense;" (3) "Property for which possession is an offense under the laws of this state;" (4) "Any person for whom a valid felony arrest warrant is outstanding;"[6] and (5) "Deceased human fetus or corpse, or part thereof[.]"
Next, each part of the search warrant is examined for both probable cause and particularity. There has been no challenge to either the probable cause or particularity aspects of the specific items that fall within categories 1 through 4, but the principal opinion suggests otherwise.
The other four checked categories, which are found on every form search warrant, do not violate the particularity requirement of the Fourth Amendment because the search warrant expressly referred back to the application for the search warrant, a fair reading of which indicates the investigation arose from M.G.'s reporting of property allegedly taken from her residence.[7] The form search warrant at issue tracked the language contained in § 542.271. Moreover, the preceding sentence to these five categories expressly referenced the specific items listed in the application for the search warrant. The express reference provided, "Based on information provided in a verified application/affidavit , the Court finds probable cause to warrant a search for and/or seizure of the following[.]" (Emphasis added). The application for the search warrant provided the description for the categories along with the description on the face of the search warrant.
The Fourth Amendment does not "prohibit[ ] a warrant from cross-referencing other documents." Groh v. Ramirez , 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Indeed, "sufficient particularity to validate a warrant inadquately [sic]
*203 limited upon its face may be supplied by the attachment or incorporation by reference of the application for the warrant and the supporting affidavits." State v. Holland , 781 S.W.2d 808, 814 (Mo. App. 1989). Even the Tenth Circuit in Sells noted the affidavit there could not remedy the "warrant's lack of particularity because it was neither incorporated by express reference in the warrant nor attached to the warrant." 463 F.3d at 1157 n.6 (emphasis added).
With these considerations in mind, if the search warrant and its supporting document-the application for the search warrant-are viewed in a "commonsens[ical, consistent,] and realistic fashion[,]" United States v. Ventresca , 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the search warrant's express reference to the application for the search warrant demonstrates that the nature of the warrant was not general at all. See Doe v. Groody , 361 F.3d 232, 248 (3d Cir. 2004) (Alito, J., dissenting) ("[T]he appropriateness of 'words of incorporation' is to be judged by the 'commonsense and realistic' standard that is generally to be used in interpreting warrants.").
To invalidate these four checked categories for lack of particularity would be to completely eliminate form warrants in general. This form search warrant tracked the language of § 542.271. Indeed, to invalidate these categories on that basis would be to call into question the constitutional validity of § 542.271, which this Court prefers to avoid completely. See, e.g. , State v. Wade , 421 S.W.3d 429, 432 (Mo. banc 2013) ("Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision."). It is difficult to imagine what a compliant search warrant even looks like under the principal opinion's view.
The principal opinion's view is also inconsistent with Supreme Court precedent. The Supreme Court in Groh explained that the particularity requirement of the Fourth Amendment may be satisfied if "the particular items described in the affidavit are also set forth in the warrant itself[.]" 540 U.S. at 560, 124 S.Ct. 1284. "What doomed the warrant in Groh was not the existence of a supporting affidavit that particularly described the items to be seized, but the failure of the warrant to cross-reference the affidavit at all." Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms , 452 F.3d 433, 439 (6th Cir. 2006) (en banc). See also 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(a) (5th ed. 2012) (noting that Groh "covers ... only" the situation in which the search warrant " 'did not describe the items to be seized at all ' ") (quoting Groh , 540 U.S. at 558, 124 S.Ct. 1284 ).
The preceding sentence to the five categories on the face of the search warrant adequately cross-references the application for the search warrant because "the particular items described in the [application for the search warrant] are also set forth in the warrant itself[.]" Groh , 540 U.S. at 560, 124 S.Ct. 1284. See also Bartholomew v. Pennsylvania , 221 F.3d 425, 429-30 (3d Cir. 2000) (suggesting there is no Fourth Amendment violation when "the list of items to be seized ... appear[s] on the face of the warrant").
Furthermore, to the extent the principal opinion "reads Groh as establishing a definitive two-part rule for validating a warrant by incorporation of a separate document[,]" Groh "establishes no such rule. Instead, Groh simply acknowledges the approach generally followed by the Courts of Appeals. Because neither requirement was satisfied in Groh , the Supreme Court declined to further consider the question of *204 incorporation by reference." United States v. Hurwitz , 459 F.3d 463, 471 (4th Cir. 2006). See also Groh , 540 U.S. at 558, 124 S.Ct. 1284 ("But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation.").
What is most important in this case for purposes of particularity analysis is that the face of the search warrant had, verbatim, the same list of detailed items the application for the search warrant provided. The fact that the record does not definitively indicate the application for the search warrant was either physically attached to the search warrant[8] or accompanied the search warrant at the time of the search, is of no consequence. Indeed, there is "nothing in the Constitution requiring that an officer possess or exhibit, at the time of the search, documents incorporated into a warrant as an additional safeguard for the particularity requirement." Hurwitz , 459 F.3d at 472-73. "The salient point is that Groh did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one." Baranski , 452 F.3d at 444. See also Hamilton , 591 F.3d at 1027 ("If the warrant in this case referred to the attached affidavit for the explicit purpose of delineating the items to be seized ... we would be inclined to follow the reasoning of the Sixth Circuit in Baranski and conclude that an affidavit incorporated into a warrant need not accompany the warrant to the search for purposes of meeting the particularity requirement of the Warrant Clause.") (emphasis added).
In any event, I reject the principal opinion's
reliance on Groh . The warrant in this case included a clear incorporation of the [application for the search warrant], which itself included an explicit list of items to be seized. The issuing judge signed both the warrant and the [application for the search warrant], demonstrating both that the circuit judge approved the search with reference to the affidavit and that the judge had the opportunity to limit the scope of the search.
Id. at 1028. It was also "objectively reasonable for an officer with [Detective Estes]'s knowledge and involvement in the warrant application process to rely on the warrant as incorporating the list of items to be seized from the [application for the search warrant]," even if the principal opinion concludes the "magic words" of incorporation were less than clear. Id. at 1029.
Accordingly, that leaves the validity of category 5, the corpse category. As noted above, there is no probable cause supporting category 5. Because most of the categories are supported by both probable cause and particularity, the next question is whether the valid portions-categories 1 through 4-are sufficiently distinguishable from the invalid portion-category 5.
Virtually all categories and items are clearly related to the theft crimes the defendants were accused of committing and eventually charged with. Likewise, the corpse category is clearly unrelated to any of the crimes the defendants allegedly committed. Nor have the defendants been charged with any homicide offense. "Where, as here, each of the categories of items to be seized describes distinct subject matter in language not linked to language *205 of other categories, and each valid category retains its significance when isolated from rest of the warrant, then the valid portions may be severed from the warrant." Sells , 463 F.3d at 1158. Accordingly, the valid portions are easily distinguishable from the lone invalid portion.
The next question is whether the valid portions make up "the greater part of the warrant." If the invalid portions make up the greater part of the search warrant such that the warrant is, in essence, a general warrant, then severance is inapplicable. A general warrant is one that authorizes "a general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire , 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A search warrant "cannot be invalidated as a general warrant [if] it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging ... in search of criminal evidence." Christine , 687 F.2d at 753.
In conducting this analysis, courts focus "on the warrant itself rather than upon an analysis of the items actually seized during the search." Sells , 463 F.3d at 1159. "Certainly, the number of valid versus invalid provisions is one element in the analysis of which portion makes up the greater part of the warrant." Id. (internal quotation marks omitted). "However, merely counting parts, without any evaluation of the practical effect of those parts, is an improperly 'hypertechnical' interpretation of the search authorized by the warrant." Id. at 1160 ; see also Gates , 462 U.S. at 236, 103 S.Ct. 2317. "A warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant." Sells , 463 F.3d at 1160. "Common sense indicates that we must also evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant." Id.
Here, both quantitative and qualitative assessments of the search warrant indicate that, when viewed, in toto, the valid portions make up the greater part of the search warrant and the corpse category was a de minimis aspect of the search warrant. In conducting the qualitative assessment,
the court must assess the relative importance on the face of the warrant of the valid and invalid provisions, weigh the body of evidence that could have been seized pursuant to the invalid portions of the warrant against the body of evidence that could properly have been seized pursuant to the clauses that were sufficiently particularized, and consider such other factors as it deems appropriate in reaching a conclusion as to whether the valid portions comprise more than an insignificant or tangential part of the warrant.
United States v. Galpin , 720 F.3d 436, 450 (2d Cir. 2013). Moreover,
Where a warrant authorizes the search of a residence, the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry: an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection.
Id. at 447.
Here, the valid portions of the search warrant authorized a rather broad search in light of the nature of the items listed (e.g., jewelry, keys, identification). Though certainly parts of a corpse might be small, a search for small parts of a corpse is unlikely to be broader than a search for small personal items like jewelry, keys, or identification. Accordingly, the corpse category neither constituted the greater part of the search warrant nor transformed the *206 warrant into a general one. At most, its inclusion in the search warrant was de minimis compared to the valid portions of the warrant. See, e.g. , Sells , 463 F.3d at 1160-61. The valid portions make up the greater part of the search warrant. Id. at 1160.
This analysis demonstrates the circuit court misapplied the law and should have severed the valid portions of the search warrant from the sole invalid portion-i.e., the corpse category-and not suppressed evidence seized pursuant to the valid portions.[9] "[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for other items as well." United States v. Cook , 657 F.2d 730, 735 (5th Cir. 1981) (internal quotation marks omitted).
The general tenor of the circuit court's order suppressing all of the evidence from the search, and the crux of the defendants' argument on appeal, is that Detective Estes's alleged misconduct in presenting the issuing judge with a proposed search warrant-authorizing a search warrant with the corpse category even though there was no probable cause to support it-required invalidation of the entire warrant. There are two problems with this determination: (1) the severance or redaction cases are not concerned with the officer's motivation in procuring the search warrant; and (2) invalidation of the entire search warrant under these circumstances would be inconsistent with well-established approaches to dealing with officer misconduct in other warrant cases.
To begin, none of the severability doctrine cases discuss what role, if any, officer misconduct plays in the analysis. Instead, the courts have examined only the search warrant and accompanying affidavit-in this case, the application for the search warrant-to discern whether the search warrant met the constitutional requirements of probable cause and particularity or whether it appeared to be a general warrant. See, e.g. , Sells , 463 F.3d at 1159 ("The 'greater part of the warrant' analysis focuses on the warrant itself rather than upon an analysis of the items actually seized during the search."); Christine , 687 F.2d at 759-60 (noting that redaction was available to the court based solely upon a review of the search warrant and affidavit); see also LaFave, supra , § 3.7(d) ("If severability is proper ... it would seem the rule would be more sensible if expressed not in terms of what was seized, but rather in terms of what search and seizure would have been permissible if the *207 warrant had only named those items as to which probable cause was established.").
Despite some courts using the terms "pretext" and "bad faith," in describing when severance is inapplicable,[10] the courts were doing nothing more than employing the "greater part of the warrant" analysis. "[A]lthough articulated in varying forms, every court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant that has been rendered a general warrant by nature of its invalid portions despite containing some valid portion." Sells , 463 F.3d at 1158. In deciding whether to apply the severance doctrine, courts are generally not concerned with why parts of a search warrant are invalid, only if they are. And to the extent that officer misconduct is relevant at all in the severance doctrine cases, the issue is subsumed within the "greater part of the warrant" analysis. If the invalid portions make up a "greater part of the warrant," resulting in a broader search than would otherwise have been authorized, the severability doctrine is inapplicable because the warrant has then been transformed into a prohibited general warrant. See id. at 1159 (characterizing language from Aday v. Superior Court , 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47, 52 (1961), wherein the California Supreme Court "recognize[d] the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirements of particularity" and condemned "[s]uch an abuse of the warrant procedure" as an articulation of the "greater part of the warrant" analysis).
While the severance doctrine presents the danger that
[t]he police might be tempted to frame warrants in general terms, adding a few specific clauses in the hope that under the protection of those clauses they could engage in general rummaging through the premises and then contend that any incriminating evidence they recovered was found in plain view during the search for the particularly-described items[,] ... careful administration of the rule will afford full protection to individual rights. First, magistrates must exercise vigilance to detect pretext and bad faith on the part of law enforcement officials. Second, courts should rigorously apply the exclusionary rule to evidence seized pursuant to the invalid portions of the warrant. Third, items not described in the sufficiently particular portions of the warrant will not be admissible unless it appears that (a) the police found the item in a place where one would reasonably have expected them to look in the process of searching for the objects described in the sufficiently particular portions of the warrant, (b) the police found the item before they found all the objects described in the sufficiently particular portions of the warrant (that is, before their lawful authority to search expired), and (c) the other requirements of the plain view rule-inadvertent discovery and probable cause to associate the item with criminal activity-are met.
Fitzgerald , 724 F.2d at 637. In short, the courts have not been concerned with why the invalid portions might have been included because, simply put, if the invalid portions rendered the search warrant, as a *208 whole, a general warrant, the entire warrant will be deemed invalid, and the severance doctrine will be inapplicable.
The second problem with wholesale suppression in this context is that it would be inconsistent with other case law dealing with officer misconduct in either procuring or executing a search warrant.[11] In Franks v. Delaware , 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court addressed the remedy for officer misconduct in the procurement of a search warrant, either through intentional misrepresentation or intentional omissions in the supporting affidavit. But even when an officer intentionally makes factual misrepresentations to the warrant-issuing judge, the remedy is not automatic, wholesale suppression. Rather, a court must "set to one side" the "material that is the subject of the alleged falsity or reckless disregard" and determine whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause[.]" Franks , 438 U.S. at 171-72, 98 S.Ct. 2674. In other words, upon a finding that the affiant officer lied to the warrant-issuing judge, the remedy the court must apply is to redact the misrepresentation and then reevaluate whether the search warrant is still supported by probable cause.
Similarly, if officers engage in misconduct when executing a search warrant by exceeding its lawful scope, the remedy is not wholesale suppression of all evidence seized.[12] Rather, when
law enforcement officers, acting pursuant to a valid warrant, seize an article whose seizure was not authorized and which does not fall within an exception to the warrant requirement[,] ... [w]ithout exception[,] federal appellate courts have held that only that evidence which was seized illegally must be suppressed; the evidence seized pursuant to the warrant has always been admitted.
Christine , 687 F.2d at 757 (footnote omitted). In other words, courts exclude only that evidence seized as a result of misconduct and not any evidence seized under lawful authority.
In my view, wholesale suppression is not the appropriate remedy in this case when there was not a single misrepresentation made on the application for the search warrant-but rather, an inappropriate box checked on the proposed search warrant-when such a remedy has been rejected when addressing intentional misrepresentations in the supporting application for the search warrant, or a search that intentionally exceeds the lawful scope of the warrant. See Lynskey, supra , at 837 ("[E]ven if the court were to find that the officer recklessly or intentionally included falsehoods in the affidavit, redaction still would be appropriate to excise only those clauses authorized pursuant to the misinformation, provided that the warrant generally is based on truth.").
This is not to say Detective Estes' conduct-in presenting the issuing judge with a proposed search warrant with the corpse category checked even though it lacked probable cause-was excusable or justifiable. To be sure, there is no "law enforcement convenience" exception to the warrant requirement, and the issuing judge should have stricken the corpse category just like he did for the "no knock" category. Indeed, "[t]he Fourth Amendment dictates that a magistrate may not issue a warrant authorizing a search and seizure which exceeds the ambit of the probable *209 cause showing made to him." Christine , 687 F.2d at 753. In short, there is simply no good reason to check a box on a proposed search warrant when the applicant knows there is no probable cause to support that category. And, in doing so, law enforcement gains nothing because even if the search warrant is severed, any evidence seized pursuant to the invalid portion of the warrant will be suppressed.
In my view, Fourth Amendment jurisprudence would only authorize suppressing evidence that was actually seized in reliance on the corpse category. Unless the officers conducting the search actually relied on the invalid portion of the search warrant in doing so, the search warrant-in the absence of redaction-created merely the potential for a Fourth Amendment violation.[13] To reiterate, the Supreme Court has "never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment." Karo , 468 U.S. at 712, 104 S.Ct. 3296.
"If at the time of seizure, the executing officers were not intruding upon the individual's expectation of privacy more than was necessary to execute the valid portion of the warrant, the Fourth Amendment does not require suppression" of evidence obtained in reliance on the valid portions of the search warrant. People v. Brown , 96 N.Y.2d 80, 725 N.Y.S.2d 601, 749 N.E.2d 170, 176 (2001). Because only actual invasions of privacy constitute a Fourth Amendment violation, if the officers' search was limited to only those items identified in the search warrant that were supported by probable cause-and the officers did not rely upon the authority granted by the improperly checked box-then the defendants' privacy was not invaded and no Fourth Amendment violation occurred.
Suppression of only evidence obtained pursuant to the invalid portion of the search warrant would not offend the Fourth Amendment. See United States v. Calandra , 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ("[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure .") (emphasis added). Yet, in this case, it is difficult to imagine what evidence, if any, the State could use against the defendants if the circuit court had overruled the motions to suppress when no evidence was obtained pursuant to the invalid portion of the search warrant.
Furthermore, if the evidence seized in reliance on the valid portions of the search warrant is not suppressed, all parties will receive a fair trial.
Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place.... [T]here is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice. Indeed, *210 suppression of the evidence would operate to undermine the adversary system by putting the State in a worse position than it would have occupied without any police misconduct.
Nix v. Williams , 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).
In conclusion, the overall tenor of the circuit court's judgment suggests total suppression was its first impulse, not its last resort. Cf. Hudson v. Michigan , 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). Total suppression should be limited to situations in which "its remedial objectives are thought most efficaciously served." Calandra , 414 U.S. at 348, 94 S.Ct. 613. Indeed,
Real deterrent value is a necessary condition for exclusion, but it is not a sufficient one. The analysis must also account for the substantial social costs generated by the rule. Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.
Davis v. United States , 564 U.S. 229, 237, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (internal citations and quotation marks omitted). The principal opinion would have M.G. (and her son) swallow the bitter pill of total suppression even though checking the box on the corpse category on the search warrant was de minimis.
Because the warrant issued was not a general warrant and no evidence whatsoever was discovered or seized based on the corpse category, the circuit court misapplied the law in suppressing all evidence seized, and its order should be reversed.
EXHIBIT A *211 *212 *213 EXHIBIT B

It remains unclear why the issuing judge struck through part of the search warrant he did not think was justified by the application for the search warrant but did not strike through the corpse category. See Ex. A ("AFFIDAVIT/APPLICATION FOR SEARCH WARRANT"); Ex. B ("SEARCH WARRANT").

Even "[i]f a court finds a clause to be 'so lacking of indicia of probable cause' that an officer could not reasonably rely on its validity, the clause should be stricken and the remaining portions upheld, provided that the warrant as a whole is not unsupported by probable cause." Rosemarie A. Lynskey, A Middle Ground Approach to the Exclusionary Remedy: Reconciling the Redaction Doctrine with United States v. Leon, 41 Vand. L. Rev. 811, 836 (1988).

The principal opinion, however, concludes the last item-"Any property readily and easily identifiable as stolen"-does not satisfy the particularity requirement of the Fourth Amendment because it is "merely conclusory language that lacks any specificity and is not limited to the offenses related to M.G.'s property" and because nothing in this item "limits the catch-all nature of the category by relating it back to the previously enumerated provisions of the warrant." Op. at 194 (internal quotation marks omitted). But what the principal opinion overlooks is the fact that this item came immediately after all of the specific items that were allegedly taken from M.G. Moreover, as discussed infra , under particularity analysis, the application for the search warrant was a part of the search warrant so the items "identifiable as stolen" were those in relation to the investigation of items allegedly taken from M.G.

It is important to emphasize this appeal does not involve evidence seized pursuant to the search warrant's corpse category. Instead, this appeal concerns the suppression of evidence seized under the lawful authority of the other, valid categories of the search warrant.

Indeed, "the interests safeguarded by the Fourth Amendment have been adequately served by the suppression of only that evidence seized by overreaching the warrant's [lawful] authorization." United States v. Christine , 687 F.2d 749, 757 (3d Cir. 1982) (emphasis added). "[This] practice ... is fully consistent with the Fourth Amendment and should be utilized to salvage partially invalid warrants." Id. at 750-51. "The cost of suppressing all the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression ." Id. at 758 (emphasis added). Federal circuit courts synonymously refer to the doctrine as "severability," "severance," "redaction," or "partial suppression." United States v. Sells , 463 F.3d 1148, 1151 n.1 (10th Cir. 2006) (listing cases).

The principal opinion asserts this category lacked probable cause. A probable cause determination "should be paid great deference by reviewing courts." Illinois v. Gates , 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotation marks omitted). But at the suppression hearing the defendants' counsel conceded there was probable cause for this category:
[T]he fact that the check box is available on a form for human remains is somewhat frightening. There was no probable cause to believe that there had been any dead bodies or parts thereof at their house.
I can understand that there may have been probable cause to believe that either of the listed subjects may have had warrants outstanding for them. I'm sure the officers did their due diligence and did a background check, records check before they went to execute this, and that would justify perhaps the other check boxes on the search warrant .
(Emphasis added).

"It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit ." United States v. Wuagneux , 683 F.2d 1343, 1349 (11th Cir. 1982) (emphasis added). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause ." Voss v. Bergsgaard , 774 F.2d 402, 404 (10th Cir. 1985) (emphasis added).

Notably, both the application for the search warrant and the search warrant were signed and dated August 29, 2013, at 3:04 P.M. Compare Ex. A, with Ex. B.

"The proponent of [a] motion [to suppress evidence] has the burden of establishing that his constitutional rights were violated by the challenged search or seizure[.]" State v. Burkhardt , 795 S.W.2d 399, 404 (Mo. banc 1990). "At a motion to suppress hearing, the State bears the burden of proving that the seizure was constitutionally proper." State v. Pike , 162 S.W.3d 464, 472 (Mo. banc 2005). Here, because the search was pursuant to a warrant, the defendants bore the burden of proving the search warrant invalid. And, they met their burden with respect to the corpse category. They failed, however, to demonstrate that the entire search warrant was invalid. Had the circuit court properly severed the search warrant, the defendants might have argued evidence was seized pursuant to the invalid portion of the search warrant, in which case the State would have borne the burden of demonstrating that the evidence sought to be admitted was seized pursuant to only the valid portion of the search warrant. However, because the circuit court erroneously found the search warrant invalid in its entirety, no such argument was made. Indeed, it is undisputed that none of the evidence sought to be suppressed had been seized under the invalid portion of the search warrant.

See, e.g. , United States v. Fitzgerald , 724 F.2d 633, 636-37 (8th Cir. 1983) (en banc) ("[A]bsent a showing of pretext or bad faith on the part of the police or the prosecution, the invalidity of part of a search warrant does not require the suppression of all the evidence seized during its execution."); Cook , 657 F.2d at 735 n.6 (noting the absence of pretext to negate application of the severance doctrine).

To reiterate, Detective Estes made no misrepresentation in his sworn application for the search warrant. Indeed, that document had no reference at all to the corpse category.

Nothing in the record suggests the officers exceeded the scope of the authorized search.

The "facial invalidity of [a search] warrant" is a separate question from the "manner in which the officers conducted the search." Baranski , 452 F.3d at 443. See also Hamilton , 591 F.3d at 1025 ("Whether a warrant is properly issued, however, is a separate question from whether it is reasonably executed, which is governed by the Reasonableness Clause of the Fourth Amendment[.]"); United States v. Basham , 268 F.3d 1199, 1204 (10th Cir. 2001) (noting the reasonableness of the execution of a warrant "is an entirely different matter than the question of whether the warrant itself is valid"). "To say that a warrant satisfies the Warrant Clause upon issuance, however, by no means establishes that a search satisfies the Reasonableness Clause upon execution[.]" Baranski , 452 F.3d at 445.